**MUNICIPAL ELECTRIC UTILITIES ASSOCIATION OF NEW YORK STATE, Plaintiff,**

v.

**Barber F. CONABLE, Jr., et al., Defendants.**

**Civ. A. No. 83–0595.**

United States District Court, District of Columbia.

Sept. 2, 1983.

Wallace L. Duncan, Duncan, Weinberg & Miller, Washington, D.C., for plaintiff.

Judy Bartnoff, Asst. U.S. Atty., Michael Davidson, M. Elizabeth Culbreth, Senate Legal Counsel, Joseph F. Davies, F.E.R.C., Leonard R. Rubin, Thomas D. Roberts, Stanley Brand, General Counsel to the Clerk, House of Representatives, Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

THOMAS F. HOGAN, District Judge.

In this suit, plaintiff asks the Court to declare that certain *ex parte* communications to the Federal Energy Regulatory Commission (FERC) were illegal, that FERC failed to follow the APA, specifically 5 U.S.C. § 557(d), and its own guidelines in handling those communications and to award damages, pursuant to 42 U.S.C. § 1983, for the resulting violations of plaintiff's civil and constitutional rights. This matter is before the Court on the motions to dismiss filed by the remaining defendants.[1] The Court conducted a plenary hearing on these motions on August 16, 1983, at which time it advised the parties that upon review of all the pleadings and the relevant case law, and after consideration of the arguments, it would grant all motions to dismiss for lack of subject matter jurisdiction. The Court briefly explained the bases for its decision and herein supplements those findings.

The long administrative trial and appellate court history of the instant controversy has been adequately documented by all parties in many of the pleadings and at argument on the motion for preliminary

---

1. President Ronald W. Reagan was previously dismissed by the Court. On August 16, 1983, plaintiff voluntarily dismissed Senator Daniel Patrick Moynihan pursuant to Fed.Rule Civ. Proc. 41(a). New York State Senator John B. Daly had not yet responded to the complaint as of the date of the hearing on these motions, having been granted an extension of time by the Court. For purposes of simplification in referring to the remaining 15 defendants in the case, the Court denotes defendants Conable, Kemp, LaFalce, and Nowak as "the House of Representatives defendants," defendants "FERC", Butler, Sheldon, Hughes, Sousa, Richard and Meyer as "the Federal defendants," and Dyson, Power Authority of the State of New York (PASNY), Daly and Millonzi as "the State defendants."

**160**

injection and the motions before the Court. A brief explanation of the case is necessary to put the discussion of the motions to dismiss in context.

## BACKGROUND

Plaintiff Municipal Electric Utilities Association of the State of New York (MEUA) is an organization of 47 municipally-owned electric utilities in the State of New York which brings this action on behalf of and as representative for each of its members. Defendant PASNY is a corporate municipal instrumentality of the State of New York. In 1957, the Federal Power Commission (now FERC) issued a license to PASNY to construct and operate a project to utilize water from the Niagara River as a power source (the Niagara project). As one of the conditions for receiving this license, PASNY as licensee was statutorily required "... in disposing of 50 per centum of the project power [to] give preference and priority to public bodies and non-profit cooperatives within economic transmission distance ...," 16 U.S.C. § 836(a). MEUA alleges that under the Act it is required to receive such a preference.

In a notice dated March 28, 1978, PASNY published in the New York State Register a notice of proposed action, in which PASNY proposed to withdraw electric power from the James A. FitzPatrick Nuclear Plant to serve preference customers though PASNY had not yet allocated to preference customers their 50% share of the output of the Niagara Project power. MEUA protested this action and the PASNY trustees voted to defer action on the proposed withdrawal of nuclear power. On May 12, 1978, MEUA filed a complaint and petition with FERC, which is authorized pursuant to 16 U.S.C. § 813 to regulate and control services rendered and rates and charges imposed for the sale in interstate commerce of wholesale power. MEUA sought to have FERC declare that PASNY's proposed action violated the terms of the Act and its license. The matter remained with the agency until October 22, 1980 when the Administrative Law Judge issued his Initial

Decision, finding in MEUA's favor, that PASNY had committed statutory and license violations. As part of this initial decision, he ordered that increased allocations be made to preference customers. Over two years later on October 13, 1982, the Commissioners issued Opinion 151, finding as the ALJ had, that PASNY had violated the Act and the terms of its license and ordering increased allocations to PASNY's preference customers. Petitions for rehearing, as required by 16 U.S.C. § 825*l* were filed on November 12, 1982 and on November 30, 1982. FERC granted rehearing for further consideration (FERC Docket No. EL78–24).

On February 25, 1983, MEUA filed a petition to deny rehearing. Over the next few months, as plaintiff alleges, various defendants sued here, attempted to influence FERC in its rehearing of Opinion 151. Plaintiff also alleges that FERC did not handle those communications in a manner consistent with the APA and its own regulations. Whether or not FERC was so influenced or conformed to regulations, on April 6, 1983, FERC issued Opinion 151–A which vacated the relief it had earlier ordered in Opinion 151, but upheld its earlier decision that PASNY had violated the law. On April 12, 1983, the Commission issued a Supplemental Opinion explaining its denial of plaintiff's February 25, 1983 motion for a denial of rehearing.

On May 6, 1983, MEUA filed two petitions with FERC: 1) a Petition for Declaratory Order and Request for Expedited Consideration (Petition for Declaratory Order); 2) a Petition for Rehearing of Opinion 151–A and Supplemental Opinion Explaining Denial of MEUA motion (Petition for Rehearing). In its Petition for Declaratory Order, MEUA challenged the substantive basis of Opinion No. 151–A, as well as FERC's refusal to disqualify itself from consideration of the case. In this petition for rehearing, MEUA presented evidence regarding its allegation that PASNY initiated *ex parte* contacts with members of the Commission. In its Petition for Rehearing, MEUA asked FERC to determine whether

MEUA's Petition for Rehearing of Opinion No. 151–A was necessary in order to preserve its objections to that opinion before the Court of Appeals.

On May 27, 1983, FERC issued an "Order Granting Declaratory Relief, Denying in Part and Granting in Part Rehearing, and Modifying Opinion No. 151 and Clarifying Opinion No. 151–A." FERC found therein that MEUA was required to seek rehearing of those aspects of Opinion No. 151–A to which it objected to preserve those objections before the Court of Appeals. FERC clarified aspects of Opinion 151–A but denied MEUA's petition for rehearing of that opinion. FERC further refused to rehear MEUA's request that it adopt Opinion 151 based on subsequent "interference" from the President and Congress. The Commission found that MEUA had not, to its satisfaction, overcome the "presumption of regularity in administrative proceedings" to warrant that relief. *MEUA v. PASNY,* No. EL78–24–022 (May 27, 1983), slip op. at 5. FERC also considered MEUA's claims that PASNY had initiated *ex parte* communications in violation of 5 U.S.C. § 557(d) but held that, "[o]ur earlier finding that the Commission's process was not tainted by *its* handling of the communications are left untouched by MEUA's new allegations." *Id.* at 6. Thus, FERC expressly considered MEUA's claims that PASNY's communications had subtroverted the rehearing of Opinion 151, rejected them and found it inappropriate to prescribe the remedy allowed by 5 U.S.C. § 557(d).[2] FERC refused to reconsider its earlier determination that it had complied with its procedures concerning the handling of correspondence regarding the pending decisions.[3] As provided for in 16 U.S.C. § 825, MEUA filed a petition for review of the May 27, 1983 orders in the U.S. Court of Appeal for the

D.C. Circuit and PASNY filed a petition for review in the U.S. Court of Appeals for the Second Circuit, seeking review of the same matters it presented the agency.[4]

## THE COMMUNICATIONS TO FERC PERSONNEL

Plaintiff alleges in this action that on December 6, 1982, defendant Dyson, Chairman of the Board of Trustees of PASNY,[5] and defendant Millonzi met with Representative Kemp in Washington, D.C. to urge him to appeal through the White House for relief from FERC Opinion 151. By letter dated December 17, 1982 to President Reagan, Representatives Kemp and Conable urged the President to assure that FERC would seriously reconsider its decision in Opinion 151 in light of the alleged negative economic consequences that it might cause (the "Kemp/Conable" letter). Representatives Kemp and Conable sent a copy of that letter to C.M. Butler, III, Chairman of FERC, and to defendant Millonzi. Millonzi transmitted the Kemp/Conable letter to FERC for a response. FERC's Office of Congressional and Public Affairs prepared and transmitted to the White House a proposed response to the Kemp/Conable letter according to normal Commission procedure. The White House rejected the draft and FERC was directed to respond to Kemp and Conable directly. Chairman Butler responded personally by letter dated February 15, 1983. On February 6, 1983, plaintiff alleges that Richard Meyer, Legal Assistant to Chairman Butler, participated in a press conference attended by defendants Daly, Kemp, Conable, Nowak and LaFalce where Chairman Butler's February 15, 1983 letter to Representatives Kemp and Conable was presented and the views of Congressmen

---

**2.** FERC did not necessarily find that "the APA's *ex parte* provisions directly govern this proceeding." *Id.* at 7 n. 4.

**3.** The Court discusses the agency's findings only to demonstrate which of plaintiff's claims were presented to and considered by the agency and not as support for its decision.

**4.** The question of appropriate venue for the appeals is currently being considered.

**5.** These communications were brought before the FERC in MEUA's May 6, 1983 Petition for Rehearing.

and others concerning Opinion No. 151 were heard.[6]

Plaintiff premises its Section 1983 cause of action against the State defendants, Congressman Kemp and Chairman C.M. Butler for their combining and conspiring under color of State law to deprive it and its members of rights guaranteed it by FERC's own regulations, the APA and the Constitution.[7] Plaintiff seeks a declaration that the actions of the House of Representatives defendants constitute political interference in an adjudicatory proceeding (*MEUA v. PASNY*) in violation of 5 U.S.C. § 557 and deprives MEUA of due process of law. Plaintiff also asks the Court to declare that the House of Representatives and the State defendants' actions constitute initiation of and participation in *ex parte* contacts and that the Federal defendants' receipt of and participation in those *ex parte* contacts relating to an adjudicatory proceeding violate 5 U.S.C. § 557, regulations of FERC, 18 C.F.R. § 385.2201, and deprive MEUA of its Fifth Amendment due process right to a fair hearing. Plaintiff further seeks to have this Court declare that the issuance of Opinion 151–A by FERC after the *ex parte* communications is contrary to law and unwarranted by the facts.

### FERC'S PROCEDURES FOR HANDLING EX PARTE COMMUNICATIONS

Plaintiffs state that on November 30, 1982, Representative Bill Green wrote to FERC Commissioner Hughes expressing concerns on the impact of Opinion 151 upon the New York Metropolitan Transportation Agency and alleging that this letter, the Kemp/Conable letter, and Chairman Butler's response to Representative Kemp were not placed in the public file or the FERC docket sheets or were not done so in a timely manner. This, plaintiff claims is in direct violation of the agency's own regulations, 18 C.F.R. § 385.2201(c), which have been adhered to for other communications concerning this matter. Plaintiff claims that on information and belief the Commission has modified the published regulations for dealing with *ex parte* communications. Based on these allegations, plaintiffs ask the Court to direct FERC to assure the integrity of the dockets of the related actions before it and to engage in formal rule-making procedures regarding its changes in handling *ex parte* communications.

### I. FEDERAL AND STATE DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLAIM FOR DEPRIVATION OF CIVIL RIGHTS

■ The Federal and State defendants assert that the Court of Appeals has the sole jurisdiction to hear a party's challenge to a final decision of FERC. The Court finds that jurisdiction over such claims is indeed vested in that Court by statute, 16 U.S.C. § 825p, and by judicial interpretation of the Act. *City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320, 78 S.Ct. 1209, 2 L.Ed.2d 1345 (1958); *Arkansas Power & Light Co. v. Federal Power Commission*, 60 F.Supp. 907 (D.D.C.1945), *rev'd*, 156 F.2d 821 (D.C.Cir.1946), *rev'd*, 330 U.S. 802, 67 S.Ct. 963, 91 L.Ed. 1261 (1946). In *City of Tacoma*, the Supreme Court found that the same statutory provision was

> written in simple words of plain meaning and leaves no room to doubt the congressional purpose and intent ... [Congress] there provided that any party aggrieved by the Commission's order may have judicial review, upon all issues raised before the Commission in the motion for rehearing, by the Court of Appeals ....
> It thereby necessarily precluded *de novo*

---

6. On March 10, 1983, Chairman Butler recused himself from the case. Plaintiff alleges that on information and belief, prior to his recusal, he and/or his staff had discussed the merits with other Commissioners and had settled on the substance of Order 151–A.

7. Plaintiff alleges that as a direct and proximate result of defendants' actions, plaintiff was deprived of its right to a fair and impartial hearing and suffered economic injury and loss of $93 million.

litigation between the parties of all issues inhering in the controversy, and all other modes of judicial review. *Id.* 357 U.S. at 335–36, 78 S.Ct. at 1218–19.

The Court recognizes that a district court may have jurisdiction to develop an adequate factual record for Court of Appeals review where there was none developed at the agency. The Court is not convinced, however, that this is a case where it must perform a fact-finding function. In *ITT World Communications v. FCC*, 699 F.2d 1219 (D.C.Cir.1983), the United States Court of Appeals found that District Court *de novo* fact-finding was necessary to consider ITT's allegation that the FCC had secretly exceeded its authority in negotiating with foreign governments on behalf of the carrier's competitors at consulting meetings in a way that would not be reflected in the administrative record. This Court sees no need at this time to develop such a record. All allegations of *ex parte* communications and their purported effect have been presented to and considered by the agency. In fact, MEUA has carefully sought to ensure that its objections on these grounds are properly preserved for appeal. Plaintiff's claims will receive yet another review by an appellate court who will, if persuaded, direct the agency to correct any tainted or improper decisions, to ensure the integrity of its processes and to hold further independent fact-finding inquiry as it deems necessary. *See e.g., Peter Kiewet v. U.S. Army*, 714 F.2d 163 at 168–169 (D.C.Cir.1983); *Professional Air Traffic Controllers Organization v. FLRA*, 672 F.2d 109 (D.C.Cir.1982); *Gulf Oil v. F.P.C.*, 563 F.2d 588 (3rd Cir.1977); *Pillsbury v. FTC*, 354 F.2d 952 (5th Cir. 1966).

■ In recognition of these precedents, and in a further effort to maintain at least part of this suit in the district court, plaintiff amended its complaint to add a claim for relief pursuant to 42 U.S.C. § 1983. The addition of this cause of action does not keep the plaintiffs here, however. First, as the Court noted at the conclusion of the plenary hearing, there is a presump-

tion against concurrent jurisdiction of a case in the Court of Appeals and the District Court. *City of Rochester v. Bond,* 603 F.2d 927, 931 (D.C.Cir.1979); *Sun Enterprises v. Train,* 532 F.2d 280 (2nd Cir. 1976). The plaintiffs have failed to demonstrate that a review of the *ex parte* contacts and FERC's compliance with its regulations concerning those communications, which is available to them in the Court of Appeals, is inadequate to afford them precisely the relief they seek in this Court. *See Whitney Nat. Bank v. Bank of New Orleans,* 379 U.S. 411, 85 S.Ct. 551, 13 L.Ed.2d 386 (1975); *Compensation Department v. Marshall,* 667 F.2d 336 (3rd Cir.1981). The Court of Appeals may, upon a review of the record, reverse the Commission's decision on the merits or order an evidentiary hearing that will "disclose whether any improper influences [have] tainted the ... decisionmaking processes," *Professional Air Traffic Controllers Organization v. FLRA,* 672 F.2d 109, 113 (D.C.Cir.1982).

Plaintiffs claim that regardless of the remedy that they may seek or be awarded in the Court of Appeals that their Fifth Amendment due process rights to a fair administrative hearing have been violated and this Court should maintain jurisdiction over this action to hear their claim for the deprivation of their civil rights under 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983. By virtue of the presence of this claim, they thus hope to have the Court find that this action must be maintained here. The Court is not so persuaded.

In *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), the Supreme Court found that plaintiffs could maintain a Section 1983 cause of action when they claimed, as plaintiffs do here, that they were deprived of the rights secured to them by federal statute. The reach of this holding was narrowed in *Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers*, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981). In that case, a class of fishermen brought suit pursuant to 42 U.S.C. § 1983 claiming that federal and

state officials had violated the rights afforded them under the Federal Water Pollution Control Act (FWPCA) and the Marine Protective Research and Sanctuary Act of 1972 (MPRSA). In that case, as here, the FWPCA and MPRSA provided detailed statutory schemes whereby plaintiffs could challenge before the United States Court of Appeals agency action which allegedly denied them rights secured to them by federal statute. The Court was thus required to determine whether a plaintiff could simultaneously seek relief under Section 1983 and pursuant to the prescribed statutory remedy. The Supreme Court found that "when the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under Section 1983." *Id.* at 20, 101 S.Ct. at 2626. It is thus clear that the remedies plaintiff seeks from this Court are only available to it via appeal from the Commission's orders to the United States Court of Appeals pursuant to the Federal Power Act.

The Court thus has no subject matter jurisdiction over this action and plaintiff's claim against the federal and State defendants and Representative Kemp for the deprivation of its civil rights must be dismissed. For the same reason, plaintiff's requests that this Court vacate FERC's actions after the alleged attempts to influence were made, declare unlawful the modification of the Commission's rules relative to the handling of *ex parte* communications and enjoin FERC's deviations from its published rules must also be dismissed. Those specific remedies or their substantial equivalent are available to plaintiff in the Court of Appeals. Since the Court finds that it has no subject matter jurisdiction over this action, it may not grant plaintiff's request that it restrain all defendants from making further *ex parte* contacts.

Plaintiff's remaining claims concern allegations that various defendants have engaged in *ex parte* contacts and attempts to interfere and influence a pending adjudicatory proceeding and plaintiff accordingly requests that the Court declare that their actions violate the Administrative Procedure Act, 5 U.S.C. § 557, and FERC regulations, 18 C.F.R. § 385.2201.

The plaintiff asks the Court to grant it a remedy pursuant to 5 U.S.C. § 557, which that statute does not envision. In *Professional Air Traffic Controllers Organization v. FLRA*, 685 F.2d 547 (D.C.Cir.1982) ("*PATCO II*), the Court of Appeals for this Circuit recognized,

> The principal purpose of the *ex parte* rules is not to punish violators, but to preserve the integrity of the administrative process. Even when a non-party is the source of an *ex parte* communication, a proceeding may be voided if the decision is irrevocably tainted. In such a case, the principal purpose of the statute would be preserved, even though a direct sanction against the violator might be unavailable.

*PATCO II, supra* at 570 n. 47.

The Court of Appeals will implement the purpose of the statute by examining the effect of these contacts and determining whether they so influenced the agency that its decision must be vacated. Parenthetically, the Court does not find at this stage that the communications from the House of Representatives to FERC were of such an extent to warrant the relief that plaintiffs seek. The Court finds, rather, that the content of those communications were within permissible bounds of legislators who validly sought to represent the views of their constituents and do not rise to the level of interference sanctioned in *Pillsbury Co. v. FTC*, 354 F.2d 952 (5th Cir. 1966). Since the agency has reviewed the extent and effect of the *ex parte* contacts and an appeal from the agency's decision has been taken whereby the plaintiff may be afforded the reinstatement of Opinion 151 after a thorough review of the extent and effect of the *ex parte* claims, plaintiff's claims in this Court shall be dismissed.

Accordingly, it is hereby this 1st day of September, 1983,

ORDERED that this case be and it hereby is dismissed pursuant to Rule 12(b)(1) of

the Federal Rules of Civil Procedure. Plaintiff's request to take discovery is denied as moot.