The **STATE OF NORTH CAROLINA, ENVIRONMENTAL POLICY INSTITUTE,** and **Conservation Council of North Carolina, Petitioners,**

v.

**ENVIRONMENTAL PROTECTION AGENCY, Respondent.**

No. 89–2097.

United States Court of Appeals, Fourth Circuit.

June 8, 1989.

---

Daniel Calvin Oakley, Asst. Atty. Gen., Daniel Francis McLawhorn, Herman Al Cole, Jr., Office of the Attorney General of North Carolina, Raleigh, N.C., for State of North Carolina.

Nancy R. Page, Rena Isadora Steinzor, Spiegel & McDiarmid, Washington, D.C., for Environmental Policy Institute.

John David Runkle, Chapel Hill, N.C., for The Conservation Council of North Carolina.

W. Christian Schumann, U.S. Department of Justice, Lands Division, Environmental Defense, Washington, D.C., Director, Environmental, Protection Agency, Environmental Protection Agency, Washington, D.C., Joshua B. Sarnoff, U.S. Environmental Protection Agency, Solid Waste and Emergency Response Div., Washington, D.C., Alvin Lenoir, U.S. Environmental Protection Agency, Environmental Protection Agency.

## MEMORANDUM AND ORDER

PHILLIPS, Circuit Judge:

This case comes before me as a single circuit judge on a motion under Rule 18 of the Federal Rules of Appellate Procedure. Petitioners seek a temporary stay, pending review by this court, of proceedings now in progress before Administrative Law Judge Spencer T. Nissen. In response to a motion by petitioners, Judge Nissen had ordered disclosure of certain information by the Environmental Protection Agency (EPA) during the pendency of those proceedings but declined to stay the proceedings pending disclosure. Petitioners have petitioned the United States Court of Ap-

peals for the Fourth Circuit for review of the part of the order declining to stay proceedings pending disclosure. The motion for temporary stay addressed to me was filed incident to the pending petition for review by the court.

I

EPA instituted the action underlying the proceedings from which petitioners appeal under the Resource Conservation and Recovery Act (RCRA) to determine whether it should withdraw the state of North Carolina's authority to administer a hazardous waste regulatory program. 42 U.S.C. § 6926(e). EPA initiated the withdrawal proceedings in November 1987, partly in response to petitions filed by GSX Chemical Services, Inc. (GSX) and the Hazardous Waste Treatment Council (HWTC) alleging that 1987 North Carolina legislation, *see* N.C.Gen.Stat. § 130A–295.01, unlawfully prevented construction of a large regional hazardous waste treatment facility on the banks of the Lumber River in Scotland County, North Carolina. The state statute required a strict dilution factor for discharge of a hazardous or toxic substance into surface water upstream from public drinking water supply intake.

EPA assigned ALJ Nissen to conduct a hearing on the withdrawal proceedings. Petitioners Environmental Policy Institute (EPI) and the Conservation Council of North Carolina obtained intervenor status and joined the state of North Carolina in its opposition to EPA's proposed withdrawal of regulatory authority. Intervenors and the state claimed that the withdrawal was unwarranted because, *inter alia,* RCRA permits states to adopt more stringent environmental protections than those mandated by the federal government. *See* 42 U.S.C. § 6929.

Under EPA regulations governing withdrawal of state certification, an ALJ is to conduct an adjudicatory proceeding and submit an initial decision. 40 C.F.R. § 271.23(b)(7)(i). The EPA Administrator then makes a final decision on the certified record. *Id.* at § 271.23(8)(i). In the present case, the EPA Administrator has officially delegated his authority to the Regional Administrator for the region in which the affected state is located (Region IV). Under this delegation, the Regional Administrator must obtain the concurrence of the EPA Assistant Administrator for Solid Waste and Emergency Response for any decision made. Because the Regional Administrator for Region IV, Greer C. Tidwell, has now recused himself, EPA has transferred authority over the withdrawal proceedings to the Regional Administrator for Region IX. The papers before me do not reflect whether this transfer has yet been formally completed, but EPA counsel assured me at the stay hearing that it has been.

Early in 1988, EPA continued the withdrawal proceedings pending comprehensive review of national hazardous waste management and disposal capacity policy. See 53 Fed.Reg. 3894 (Feb. 10, 1988) (continuing postponement until June 29, 1988). The agency subsequently prolonged the postponement on several occasions. *See* 53 Fed.Reg. 20845 (June 7, 1988) (continuing postponement until September 19, 1988); 53 Fed.Reg. 32899 (August 29, 1988) (continuing postponement until "further notice"). In December 1988, GSX and HWTC filed a petition in the Court of Appeals for the District of Columbia Circuit, reportedly seeking a writ of mandamus ordering EPA to schedule and hold a withdrawal hearing within 30 days. During the pendency of that petition, on April 19, 1989, EPA Region IV Administrator Tidwell issued a notice announcing resumption of the withdrawal proceedings. ALJ Nissen scheduled a prehearing conference for May 31, 1989 in Raleigh, North Carolina, which was to be followed immediately by a hearing on the merits of EPA's proposed withdrawal of North Carolina's RCRA authorization. By joint motion of petitioners and respondent, the D.C.Circuit then continued consideration of the mandamus petition pending completion of the hearing. *In re Hazardous Waste Treatment Council and GSX Chem. Serv., Inc.,* No. 88–1889 (D.C.Cir. May 11, 1989).

Petitioners subsequently sought from EPA a stay of the hearing pending disclosure of alleged *ex parte* communications between EPA officials and certain "inter-

ested parties" on the merits of the withdrawal proceedings. Petitioners claim to have suspected for some time that the withdrawal proceedings might be tainted by such communications. In a letter dated April 22, 1988, attorneys from the North Carolina Department of Justice wrote then EPA Administrator Lee Thomas requesting disclosure of all alleged *ex parte* communications on this issue. (Because EPA subsequently continued the withdrawal proceedings, it responded in a letter dated October 24, 1988 that it was suspending further investigation of the matter.) More recently, petitioners have again sought disclosure of any *ex parte* communications, filing motions requesting that the Administrator or ALJ Nissen order a hearing and permit discovery in order to investigate *ex parte* communications. On May 12, 1989, the ALJ denied the motion on the ground that only the EPA Administrator had jurisdiction to resolve such matters. The EPA Administrator remanded a separate but similar motion to the ALJ on May 26, 1989. At a prehearing conference on May 31, 1989, ALJ Nissen orally granted petitioners' motion for disclosure of all *ex parte* communications by EPA on the merits of the withdrawal proceedings but denied the accompanying request for a continuance of the hearing pending disclosure.

The moving parties—the State of North Carolina, the Environmental Policy Institute, and the Conservation Council of North Carolina—have now petitioned the Fourth Circuit for review under the RCRA, 42 U.S.C. § 6976(b), the Administrative Procedure Act (APA), 5 U.S.C. §§ 551–59, 701–06, and seek relief alternatively under the All Writs Act, 28 U.S.C. § 1651(a). Contemporaneously they have brought this motion before me as a single circuit judge under Rule 18 of the Federal Rules of Appellate Procedure, seeking a stay of all administrative proceedings pending consideration by this court of the merits of their petition. GSX and HWTC sought to intervene on the side of EPA, and I allowed that motion.

On Friday, June 2, 1989, the parties appeared before me for a hearing on the motion for temporary stay. At the hearing's conclusion, I indicated my intent to deny the Rule 18 stay motion, and I now do so for the reasons expressed below.

II

At the outset, EPA, joined by the intervenors, suggests that this court and I lack (or should not assert) jurisdiction to entertain the petition for review or, in consequence, this Rule 18 motion. Two grounds are urged: (1) the D.C.Circuit's acceptance of intervenors' petition for mandamus has vested jurisdiction in that court, to the exclusion of all others; and (2) the underlying petition here improperly seeks review of a non-final administrative order.

A

Petitioners claim that we have jurisdiction under the All Writs Act to grant the requested relief in aid of our potential jurisdiction, under 42 U.S.C. § 6976(b), over any petition for review of EPA's final action in the withdrawal proceedings. Section 6976(b) of the Act provides that "[r]eview of the [EPA] Administrator's action ... in granting, denying, or withdrawing authorization or interim authorization under [42 U.S.C. § ] 6926 ... may be had by any interested person in the Circuit Court of Appeals of the United States for the Federal judicial district in which such person resides or transacts business upon application by such person." This provision obviously leaves open the possibility that more than one court of appeals will have the power to review EPA's final action in a withdrawal proceeding, because the "interested person[s]" may reside in more than one "Federal judicial district." EPA and the intervenors suggest that this court should decline to exercise jurisdiction over this case precisely because of the resulting potential, said to be present here, for an "embarassing conflict between different courts of appeals." 16 C. Wright, A. Miller, E. Cooper & E. Gressman, *Federal Practice and Procedure* § 3944, at 334 (1977). Since the D.C.Circuit has already accepted a petition for All Writs relief in aid of *its* prospective jurisdiction over this case under § 6976(b), says the respondent,

we should decline now to entertain a similar prayer for interim relief.

Congress recently enacted amended legislation designed to address the recurrent problem of interested parties filing petitions for review of agency action in two or more courts of appeals. *See* Pub.L. No. 100–236, § 1, 102 Stat. 1731 (1988) (amending Pub.L. No. 85–791, § 2, 72 Stat. 941 (1958) and codified as amended at 28 U.S.C. § 2112). The statute's "first filing rule" provides that, "in all proceedings instituted in the courts of appeals to enjoin, set aside, suspend, modify, or otherwise review or enforce orders of administrative agencies, boards, commissions, and officers," venue presumptively lies in the first court to receive an interested party's petition for relief.

If proceedings are instituted in two or more courts of appeals *with respect to the same order,* the following shall apply:

(1) [Establishing procedure in certain specialized circumstances, not present or relevant here, and continuing:] In all other cases in which proceedings have been instituted in two or more courts of appeals *with respect to the same order,* the agency, board, commission, or officer concerned shall file the record in the court in which proceedings with respect to the order were first instituted.

　*　　*　　*　　*　　*　　*

(5) All courts in which proceedings are instituted with respect to the same order, other than the court in which the record is filed pursuant to this subsection, *shall transfer those proceedings to the court in which the record is so filed [viz.,* in most cases, to the court in which proceedings were first instituted]. For the convenience of the parties in the interest of justice, the court in which the record is filed may thereafter transfer all the proceedings with respect to that order to any other court of appeals.

28 U.S.C. § 2112(a) (emphasis supplied). Here, the claim by EPA that the D.C.Circuit already has asserted jurisdiction, and that we therefore should decline to consider the petition for review, raises two separate questions: first, whether an interlocu-tory petition for All Writs relief is a filing which triggers "priority" under § 2112(a), and second, whether the petition here implicates the "same order" as the mandamus petition filed in our sister circuit.

　The D.C. Circuit has itself answered the first question in the negative. In *American Public Gas Ass'n v. Federal Power Comm'n,* 555 F.2d 852 (D.C.Cir. 1976), interested parties simultaneously filed petitions for review of a final agency order in the Fifth and D.C. Circuits. Panels of the two courts agreed to designate the D.C. Circuit as the "surrogate" court of first filing, hence the court charged under § 2112(a) with determining whether circumstances required a transfer of venue. In the course of an opinion addressed largely to the question of where, for the "convenience of the parties," review proceedings should then go forward, the *American Public Gas* court rejected an argument akin to the one presented here by the respondents—namely, that petitions for equitable relief filed *before* an agency takes final action trigger "priority" under some variant of the first filing rule.

> Nor are we persuaded that priority was conferred by proceedings in this circuit seeking emergency relief.... To hold that a motion under the All Writs Act for extraordinary relief from an order— when a petition for review [on the merits] of that order would be premature— constitutes a "proceeding with respect to such order" within the meaning of Section 2112(a) might accelerate races to the courthouse in efforts to secure the forum for the merits. See *Amerada Petroleum Corp. v. FPC,* 338 F.2d 808, 810 (10th Cir.1964). We think the better reconstruction of congressional intent is that requests for interim relief are not to be included in the calculus of first-filing set forth in Section 2112(a).

*Id.* at 856–57.

This simple and pragmatic reasoning has great force here. Were we to hold that, once a party has presented a court of appeals with *any* petition for relief from a non-final agency action, the statutory first filing rule (or some judicial gloss on it) precludes consideration by any other court

of a petition for interim relief or even the first of several petitions for review of final agency action, we would encourage disorderly dashes to the courthouse and frustrate the clear purposes of § 2112(a). More significantly, we might also encourage frivolous filings. A party seeking to secure review in the forum of its choice of final agency action—or at least threshold consideration of competing claims with respect to the most appropriate venue for such review—would need merely to file an interlocutory petition for mandamus or other All Writs relief, however non-meritorious, in the selected court. This of course counsels against extension of the "first filing" principle here, since it would obviously promote uncertainty about precisely when "priority" attaches under the rule.

It is far from clear, moreover, whether the mandamus petition pending in the D.C. Circuit and the present "petition for review" truly implicate the "same order." Intervenors' mandamus petition sought relief from purportedly unwarranted delay in the recommencement of the withdrawal proceedings. The petitioners here raise fundamental questions about the integrity of those proceedings—now that they are once again underway—and the propriety of an ALJ's interlocutory procedural ruling. The questions presented and the administrative actions challenged are obviously distinct. In turn, there is substantial doubt that the "first filing rule," at least as limited by the language of the statute, can or should be applied.

Courts have strictly construed the scope of § 2112(a) and held that the first filing rule does not apply where competing petitions for review challenge closely related but nevertheless distinct agency orders. *See, e.g., Midwest Video Corp. v. United States,* 362 F.2d 259, 261 (8th Cir.1966). This does not suggest that a court cannot, in an exercise of its discretion, transfer a matter to another forum, *see American Civil Liberties Union v. FCC.,* 486 F.2d 411, 414 (D.C.Cir.1973), and it may well be that, in various circumstances, such a transfer would not only speed resolution of a case but further the interests of justice. *See Natural Resources Defense Council,*

*Inc. v. EPA,* 673 F.2d 392, 398 (D.C.Cir. 1980). Whether such circumstances exist here is a question the parties have not addressed; but, as shall be seen, it need not be answered here. The only point is that the first filing rule is no *impediment* to our assertion of jurisdiction in this case, leading us to the next question of whether, venue problems aside, we even can or should intervene in the withdrawal proceedings at this early stage.

B

This question is raised by the respondent's more fundamental claim that this court, hence I as a single judge of the court, cannot exercise jurisdiction in this case because the agency action sought to be reviewed by the underlying petition is a "non-final" administrative order dealing solely with procedural matters.

EPA correctly points out that the jurisdictional statutes invoked by the petitioners empower this court to review only "final" agency action. Section 10(c) of the Administrative Procedure Act, 5 U.S.C. § 704, provides for judicial review only of "[a]gency action made reviewable by statute and *final agency action for which there is no other adequate remedy in a court"* (emphasis supplied). Similarly, § 7002 of the RCRA, 42 U.S.C. § 6976(b), which petitioners say vests us with jurisdiction over their claim, provides for judicial review only of final EPA action "in granting, denying, or withdrawing" states' regulatory authority. Petitioners obviously cannot claim that ALJ Nissen's ruling on their motion for a stay of all proceedings pending disclosure of the alleged *ex parte* communications constituted a "final" ruling within the meaning of these statutes. The question, therefore, is whether this court nevertheless can exercise jurisdiction over this case under a judicially recognized exception to the finality requirement.

■ On occasion, courts have undertaken "interlocutory review of nonfinal administrative action where the agency proceedings suffer from a fundamental infirmity requiring a court to act immediately

to protect [petitioner's] rights to a fair proceeding." *Gulf Oil Corp. v. Dept. of Energy,* 663 F.2d 296, 312 (D.C.Cir.1981). As a general rule, "no court, having the power of review of the actions of an administrative agency, should exercise that power to 'review mere preliminary or procedural orders or orders which do not finally determine [some substantive] rights of the parties.'" *Consolidated Gas Supply Corp. v. FERC,* 611 F.2d 951, 958 (4th Cir.1979) (quoting *Atlantic Seaboard Corp. v. Federal Power Comm'n,* 201 F.2d 568, 572 (4th Cir.1953)). Interlocutory review may be appropriate, however, in those rare circumstances where it appears that the ongoing agency proceedings have been tainted by, for example, the manifest bias of administrative decisionmakers, *Association of National Advertisers, Inc. v. FTC,* 627 F.2d 1151 (D.C.Cir.1979), an improper denial of public hearings, *Fitzgerald v. Hampton,* 467 F.2d 755 (D.C.Cir.1972), unreasonable delay, *Air Line Pilots Ass'n v. CAB,* 750 F.2d 81 (D.C.Cir.1984), or, as alleged here, improper *ex parte* contacts between interested parties and responsible agency officials. *See Gulf Oil,* 663 F.2d at 313.

As a technical matter, our power to intervene in such circumstances could be derived from the All Writs Act, pursuant to which we may grant equitable relief in aid of our ultimate, prospective jurisdiction over *final* agency action, *see generally Telecommunications Research & Action Center v. FCC,* 750 F.2d 70 (D.C.Cir.1984), or from the inherent power of courts in cases which they might ultimately review on the merits, to exercise their "equitable powers ... to preserve a substantial right from irretrievable subversion in an administrative proceeding." *Nader v. Volpe,* 466 F.2d 261, 269 (D.C.Cir.1972). Whatever the ultimate source of the power, the question on which its exercise turns is whether the order whose review is sought "constitute[s] an effective deprivation of [their] rights," necessitating interlocutory intervention, *Thermal Ecology Must Be Preserved v. Atomic Energy Comm'n,* 433 F.2d 524, 526 (D.C.Cir.1970), or whether, instead, normal administrative processes offer the petitioners sufficient protection against irremediable harm.

■ Put another way, the dispositive question is the extent to which the threat of taint of the proceedings is one that can be safeguarded against in the very course of the ongoing administrative proceedings, so that protection of the interests asserted by the petitioners can safely be left at this point to the administrative process.

■ The taint which petitioners allege is *ex parte* communications between EPA's decisionmakers and interested outside parties. Both the APA and EPA's own regulations require such communications to be disclosed. The APA proscribes *ex parte* communications in connection with adjudicatory hearings such as the withdrawal proceedings here at issue. *See* 5 U.S.C. §§ 554(a), 556(a), 557(a), (d)(1). Specifically, the APA prohibits *ex parte* communications relevant to the merits of a proceeding between any interested party outside the agency and any agency employee "who is or may reasonably be expected to be involved in the decisional process of the proceeding." *Id.* at §§ 557(d)(1)(A), (B). This language should be read broadly, I think, to include anyone who was involved in the decisional process but is no longer an agency employee or has recused himself or herself from further involvement. The prohibitions against *ex parte* communications begin to apply no later than the time at which "a proceeding is noticed for hearing," 5 U.S.C. § 557(d)(1)(E), and subsequent suspension of proceedings does not abrogate the applicability of the *ex parte* rules. *See National Small Shipments Traffic Conference, Inc. v. ICC,* 590 F.2d 345, 351 (D.C.Cir.1978). If any *ex parte* communications do occur, disclosure of these communications must be placed in the public record of the proceeding. 5 U.S.C. § 557(d)(1)(C); *Home Box Office, Inc. v. FCC.,* 567 F.2d 9, 57 (D.C.Cir.1977). This requirement covers both written and oral communications; submission of memoranda stating the substance of the latter is required. 5 U.S.C. § 557(d)(1)(C)(ii). Similar disclosure requirements govern EPA withdrawal proceedings. *See* 40 C.F.R.

§ 22.08, *as modified by* 40 C.F.R. § 271.23(b)(3)(v).

Disclosure requirements serve the "fundamental notions of fairness implicit in due process and ... the ideal of reasoned decisionmaking on the merits which undergirds all of our administrative law." *Home Box Office*, 567 F.2d at 56. Only through disclosure of *ex parte* communications may we protect the public's "right to participate meaningfully in the decisionmaking process" and "the critical role of adversarial comment in ensuring proper functioning of agency decisionmaking and effective judicial review." *United States Lines, Inc. v. Federal Maritime Comm'n*, 584 F.2d 519, 540, 542 (D.C.Cir.1978).

■■■ An ALJ conducting an on-the-record hearing, therefore, can and is obliged to explore the possibility of and protect against taint of the proceeding by *ex parte* communications when such a possibility is plausibly suggested by a party with standing to do so. Specifically, if warranted, an ALJ may, as has Judge Nissen here, require disclosure of all proscribed *ex parte* communications on the record before rendering final decision. *Id.* at 535. To ensure that any communications disclosed receive proper consideration, he or she may and should give parties an adequate opportunity to review them, comment upon them, and if appropriate order any further disclosures that may appear warranted. Finally, if warranted, an ALJ may order and conduct "an evidentiary hearing to determine the nature, extent, source and effect of any and all ex parte communications...." *Professional Air Traffic Controllers Org. v. FLRA*, 672 F.2d 109, 113 (D.C.Cir.1982). Upon receipt of all evidence of *ex parte* communications, an ALJ may then require a party demonstrated to have communicated *ex parte* "to show cause why his claim or interest in the proceeding should not be dismissed, denied, disregarded, or otherwise adversely affected on account of such violation...." 5 U.S.C. § 557(d)(1)(D).

■■■ Both the means and the obligation to protect against the possibility of taint by *ex parte* communications are therefore present in the ongoing administrative proceeding. At this point, I must assume that this obligation will be met in the present hearing both because I must presume the regularity and integrity of the proceedings before ALJ Nissen and, more specifically, because his oral order of May 31, 1989, plainly indicates the judge's awareness of and commitment to providing this protection. While ALJ Nissen denied the motion for a stay in proceedings pending disclosure, he did order EPA to disclose all alleged *ex parte* communications before the end of the hearing, and assured petitioners that he would give them ample time and opportunity to address and rebut the information disclosed. He also indicated that if the material disclosed suggested that a broader inquiry were warranted, he would order an evidentiary hearing. Although the ALJ's order did not explore in exact detail the procedure he intends to follow upon disclosure, it is evident that he will insist, before he reaches his decision on the merits, that EPA has complied with his disclosure order; that he will consider the material disclosed to determine whether it indicates a level of bias or taint in the withdrawal proceedings that would draw their validity into question; and that he will take any appropriate action at that time.

At the hearing before me on June 2, 1989, EPA counsel also gave assurances of the agency's intention fully to comply with ALJ Nissen's May 31, 1989, order and indeed to disclose all material that might possibly constitute *ex parte* communications, whether or not the agency believes them to be communications proscribed by statute or regulation. Of course I accept that representation.

For all the above reasons, I have concluded that I should deny the temporary stay of proceedings sought by petitioners. This is without prejudice to their right to seek appropriate relief in the matter if later developments are thought to warrant it.

SO ORDERED.