## In re CITY OF VIRGINIA BEACH, Petitioner.

**Commonwealth of Virginia, Amicus Curiae.**

No. 94–1904.

United States Court of Appeals, Fourth Circuit.

Argued Sept. 27, 1994.

Decided Dec. 22, 1994.

**ARGUED:** M. Scott Hart, John F. Kay, Jr., Mays & Valentine, Richmond, VA, for petitioner. James Stuart Gilmore, III, Atty. Gen. of Virginia, Richmond, VA, for amicus curiae. Jerome M. Feit, Solicitor, F.E.R.C.; Peter Richard Steenland, Jr., Chief, Appellate Section, Environment & Natural Resources Div., U.S. Dept. of Justice, Washington, DC, for respondents. **ON PLEADINGS:** George A. Somerville, Samuel M. Brock, III, Mays & Valentine, Richmond, VA; Leslie L. Lilley, City Atty., William M. Macali, Senior Asst. City Atty., City of Virginia Beach, Virginia Beach, VA, for petitioner. John Paul Woodley, Jr., Deputy Atty. Gen., Roger L. Chaffe, Senior Asst. Atty. Gen., Dennis Henry Treacy, Asst. Atty. Gen., Richmond, VA, for amicus curiae. Joseph F. Davies, Deputy Sol., Edward S. Geldermann, F.E.R.C.; Anne S. Almy, Samuel C. Alexander, Environment & Natural Resources Div., U.S. Dept. of Justice, Washington, DC, for respondent U.S.; Ronald John Wilson, Sierra Club Legal Defense Fund, Inc., Washington, DC, for respondent Sierra Club; Michael F. Easley, Atty. Gen. of North Carolina, Alan S. Hirsch, Senior Deputy Atty. Gen., James Philip Allen, Asst. Atty. Gen., North Carolina Dept. of Justice, Raleigh, NC; Frederick M. Lowther, Bernard Nash, Dickstein, Shapiro & Morin, L.L.P., Washington, DC, for respondent State of N.C.; Patrick Michael McSweeney, McSweeney, Burtch & Crump, P.C., Richmond, VA, for respondents Roanoke River Basin and Town of Weldon; James L. Gale, Gary Robert Govert, Paul K. Sun, Jr., Smith, Helms, Mulliss & Moore, L.L.P., Raleigh, NC, for respondent Roanoke Rapids Sanitary Dist.

Before HALL, MURNAGHAN, and NIEMEYER, Circuit Judges.

Petition denied by published opinion. Judge NIEMEYER wrote the opinion, in which Judge HALL and Judge MURNAGHAN joined.

## OPINION

NIEMEYER, Circuit Judge:

The City of Virginia Beach, Virginia, petitions this court for a writ of mandamus, pursuant to 28 U.S.C. § 1651, to compel the Federal Energy Regulatory Commission (FERC) to enter, by a date certain, a final decision on an application for approval of a water pipeline from Lake Gaston, located on the North Carolina–Virginia border, to Virginia Beach. The petition, which is an interlocutory request for relief, essentially states that FERC is unnecessarily delaying entry of its decision on this long-pending project for arbitrary and capricious reasons. Although we share, to some extent, Virginia Beach's concerns about the administrative burdens imposed on this project and, in particular, about the delay experienced in obtaining FERC's decision, we deny the petition, relying in large part on the assurances given to us by FERC, both at oral argument and thereafter.

In July 1983, Virginia Beach applied for a permit from the Army Corps of Engineers, as required by the Rivers and Harbors Appropriation Act of 1899 and the Clean Water Act, to construct a pipeline from Lake Gaston to Virginia Beach to carry 60 million gallons of water per day for use by the people of Virginia Beach. This permit was approved in early 1984. Virginia Beach then approached Virginia Electric and Power Company (VEPCO), which held a license from FERC to construct and operate Lake Gaston as a hydropower project, to request that VEPCO file an application with FERC for approval to use the water and its surroundings at Lake Gaston for the pipeline project. VEPCO, which had agreed to provide Virginia Beach with the necessary easements at Lake Gaston, nevertheless declined to file an application with FERC until the Army Corps of Engineers' permit had been

affirmed by the courts. The history of judicial review of that permit, extending from 1984 until 1991, is recounted in our earlier opinions. *See Roanoke River Basin Ass'n v. Hudson,* 940 F.2d 58 (4th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1164, 117 L.Ed.2d 411 (1992); *State of North Carolina v. City of Virginia Beach,* 951 F.2d 596 (4th Cir.1991).

In February 1991, seven years after Virginia Beach obtained its permit from the Army Corps of Engineers, VEPCO submitted its application to FERC for permission to transfer those necessary easements at Lake Gaston to Virginia Beach. For almost two years thereafter, FERC stayed its hand, suspending processing of VEPCO's application while the Department of Commerce considered an objection made by North Carolina that the proposed pipeline project was inconsistent with North Carolina's Coastal Zone Management Program.[1] Yet 18 months later, FERC concluded, reversing an earlier position taken by its staff and adopting a position contrary to other agencies that had reviewed the project, that it must draft an environmental impact statement (EIS), which it expected would be completed by June 30, 1995 (about four and one-half years after FERC initially received VEPCO's application). Upon the announcement of this decision in July 1994, Virginia Beach filed this petition, generally contending that its vital water project "continues to be egregiously and unreasonably delayed" by FERC's arbitrary and capricious decision to prepare an EIS after having initially concluded, in light of past reviews of the project, that an EIS was not necessary. Virginia Beach's petition for a writ of mandamus requests an order from us directing FERC to enter a final decision on VEPCO's application no later than August 25, 1994, a date that we allowed to pass when we scheduled oral argument.

1. According to section 307(c)(3)(A) of the Coastal Zone Management Act, codified at 16 U.S.C. § 1456(c)(3)(A), if a reviewing state objects to an applicant's consistency certification, the federal agency (in this case FERC) may issue a license of permit only if the Secretary of Commerce overrides the objection. In this case the Secretary of Commerce Barbara H. Franklin decided on De-

cember 3, 1992, that North Carolina did not have authority to object to the project and terminated North Carolina's objection. Thereafter, the successor Secretary of Commerce, Ronald H. Brown, reversed Secretary Franklin's standing determination and reached the merits of North Carolina's objection. In May 1994, Secretary Brown overrode North Carolina's objection.

Virginia Beach contends that the writ is imperative "to alleviate a public water supply crisis that threatens the health and safety of nearly one million people and the operational readiness of the largest naval complex in the entire free world."

Virginia Beach rests its petition on an alleged violation of the Administrative Procedure Act, 5 U.S.C. § 555(b), which mandates that an agency act to conclude matters presented to it "within a reasonable time." It argues that FERC cannot be acting within a reasonable time when it consumes substantial periods for the pursuit of actions that are arbitrary and capricious. Virginia Beach maintains in particular (1) that FERC has ignored previous environmental analyses conducted by the Army Corps of Engineers and the Secretary of Commerce on the same environmental issues; (2) that FERC's decision to prepare an EIS is not supported by its own underlying analysis; and (3) that the stated "uncertainty" about future consumptive water uses and resulting cumulative impacts on the lower Roanoke River is not a legitimate reason to require the preparation of an EIS. Virginia Beach seeks interlocutory appellate review to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

FERC responds to this petition, noting that the various steps it pursued in the administrative process were legal and that it engaged in no "unwarranted delay in processing VEPCO's application." FERC noted that the principal portion of the delay was attributable to a stay pending review by the Secretary of Commerce on North Carolina's coastal zone objection and that this deference was "nothing other than the routine application of Commission policy and procedure." It insists that other actions pursued by FERC were also consistent with normal agency procedures. Finally, FERC states that it "has proceeded with dispatch," upon deciding to prepare an EIS, and has instructed its staff to prepare the EIS "as expeditiously as feasible" and "on a priority basis." FERC has set June 30, 1995, as a firm deadline for completing the EIS. At argu-

ment, FERC continued to assure the court of the project's high priority, and subsequent to argument FERC advised the court that it has scheduled the release of a draft EIS in February 1995 and expects that a final EIS will be completed in the second calendar quarter of 1995.

■ Under the All Writs Act, we have the power to issue "all writs necessary or appropriate in aid of [our] . . . jurisdiction[ ]," 28 U.S.C. § 1651(a), and because we have exclusive jurisdiction of petitions for final review of FERC decisions, we have jurisdiction to consider interlocutory relief. *See* 16 U.S.C. § 825*l*. *See also Virginia Dep't of Educ. v. Riley*, 23 F.3d 80 (4th Cir.1994). Whether we exercise the power to grant a petition for writ of mandamus is, however, another question entirely.

■ It is well established that the remedy of mandamus "is a drastic one, to be invoked only in extraordinary situations." *Kerr v. United States District Court*, 426 U.S. 394, 402, 96 S.Ct. 2119, 2123, 48 L.Ed.2d 725 (1976). There must be no other adequate means of relief available, and the petitioner must demonstrate that its right to issuance of the writ is "clear and indisputable." *Id.* at 403, 96 S.Ct. at 2124. We will not insert ourselves into an ongoing administrative process if that process already affords the petitioner "sufficient protection against irremediable harm." *State of North Carolina Envtl. Policy Inst. v. EPA*, 881 F.2d 1250, 1257 (4th Cir.1989). Moreover, when the action sought to be reviewed is one that is committed to discretion, "it cannot be said that a litigant's right to a particular result is 'clear and indisputable,' " and relief by a writ of mandamus would ordinarily not be available. *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36, 101 S.Ct. 188, 191, 66 L.Ed.2d 193 (1980). We have observed additionally that a writ of mandamus should not issue unless irreparable harm is likely. *See Riley*, 23 F.3d at 84.

■ We have concluded, though, that interlocutory review by mandamus or injunc-

tion may be appropriate in those "rare circumstances" where the ongoing agency proceedings suffer from a "fundamental infirmity" threatening petitioner's right to a fair proceeding. *State of North Carolina Envtl. Policy Inst.*, 881 F.2d at 1256–57. Such rare circumstances occur where agency proceedings have been "tainted" by, among other things, the bias of decisionmakers, unreasonable delay, improper denial of public hearings, or improper ex parte contacts with agency officials. Thus, a fundamental infirmity in an agency proceeding, justifying interlocutory relief, may occur when an agency unduly delays the resolution of a matter committed to it. But only an egregious delay would warrant the extraordinary remedy of mandamus. *See Telecommunications Research & Action Ctr. v. FCC ("TRAC")*, 750 F.2d 70 (D.C.Cir.1984).

■ In this case, Virginia Beach has linked the agency's long delay in processing VEPCO's application with alleged arbitrary interim decisions to argue that that delay is "egregious" and unreasonable under the Administrative Procedure Act. In some sense this argument implicitly acknowledges that if FERC had been occupied with legitimate agency tasks during this period, the delay might not be egregious and require court intervention. Thus the argument, by implication, invites us to review the substance of FERC's decision in deciding to order that an EIS be completed. While we decline that invitation at this interlocutory stage of review, *see Riley*, 23 F.3d at 83; *State of North Carolina Envtl. Policy Inst.*, 881 F.2d at 1257, nevertheless we must remain satisfied that the agency has not exceeded its statutory authority in undertaking an environmental review and ordering the completion of an EIS.

To support its decision to review independently the environmental issues implicated in approving VEPCO's application, FERC contends that it cannot rely completely on earlier data developed by other agencies without assuring itself that the data remain accurate and relevant to the current application presented to FERC. FERC also contends that it is an independent agency whose responsibilities differ from those of the Army Corps of Engineers and the Department of Commerce. With different criteria for reviewing an application, FERC contends it has different standards for its environmental review. It concludes:

> Given these comprehensive environmental review standards which FERC must apply in reviewing the Lake Gaston project, the Commission had no statutory basis—indeed it would be in derogation of its statutory duties—to simply rely on the [Army Corps of Engineers] previous environmental review of the project.

*See* National Environmental Policy Act (NEPA), 42 U.S.C. § 4332(2); *North Carolina v. F.A.A.*, 957 F.2d 1125, 1129–30 (4th Cir.1992).

Without deciding whether FERC's criteria for conducting an environmental review are different from those employed by the Army Corps of Engineers or the Secretary of Commerce, we agree that FERC has a duty to comply with NEPA. Ordinarily FERC's environmental review could be, and should be, completed in conjunction with that of other reviewing agencies, *see* 40 C.F.R. § 1501.6, but, for reasons not attributable to FERC, it did not receive VEPCO's application until February 1991.

■ Once we conclude that FERC had a statutory duty to fulfill, whether it has done so correctly can be adequately reviewed following its final action. At that time, we would review FERC's actions according to the standards imposed by the Administrative Procedure Act.

■ Having satisfied ourselves that FERC's environmental review is statutorily authorized, we must still determine whether FERC has egregiously delayed its final action. We cannot help but notice that the final EIS is not scheduled for issuance until almost four and one-half years after FERC received the application. That lengthy time period alone prompts an inquiry demanding

an agency response. In the ordinary course of events, the bureaucracy of government and, in particular, environmental impact statements, should not occupy so long a period that delay itself becomes a defeating factor. *Cf.* 40 C.F.R. § 1500.5 (directing agencies to follow listed methods for avoiding delay). It goes without the need of citation that a material aspect of any just determination is that the decisional process not be unduly protracted.[2] This is particularly so when "human health and welfare are at stake." *TRAC,* 750 F.2d at 80.

We have reviewed each of the steps taken in the administrative process in this case. And while we cannot be happy about the overall time elapsed, we confirm that there are rational explanations for the length of each time segment. The greatest delay, attributable to FERC's stay pending review by the Secretary of Commerce, is justified by application of established agency procedure. It is unfortunate that parallel reviews by FERC and the Commerce Department were not then pursued. However, with FERC's continuing assurance of expedited treatment and its promise to adhere to a tight schedule, we cannot conclude that the delays have been so egregious as to meet the demanding standard required for us to interfere with the agency process through a writ of mandamus. Accordingly, we deny the petition.

*IT IS SO ORDERED.*

---

**2.** Indeed, that reality, among others, prompted the English barons to extract from King John at Runnymede the promise, "Nulli vendemus, nulli negabimus, aut differemus justitiam, vel rectum (To no one will we sell, deny, *or delay* justice or right)." Carta Libertatum (later, Magna Carta), chapter 40 (June 15, 1215) (emphasis added).