## PROFESSIONAL AIR TRAFFIC CONTROLLERS ORGANIZATION (PATCO), Petitioner,

v.

## FEDERAL LABOR RELATIONS AUTHORITY (FLRA), Respondent,

### Federal Aviation Administration, Intervenor.

### No. 81–2135.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 3, 1981.

Decided Feb. 16, 1982.

Richard J. Leighton, Washington, D. C., with whom Neal Goldfarb, Washington, D. C., and R. Russell Bailey, were on brief, for petitioner.

Anthony J. Skirlick, Jr., entered an appearance amicus curiae, pro se.

Mary Elizabeth Medaglia, Acting Sol., Federal Labor Relations Authority, Washington, D. C., with whom William E. Persina and William R. Tobey, Attys., Federal Labor Relations Authority, Washington, D. C., were on brief, for respondent.

Mark H. Gallant, Atty., Dept. of Justice, Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., Washington, D. C., at the time the briefs were submitted, William Kanter and Frederick Geilfuss, Attys., Dept. of Justice, Washington, D. C., were on brief for intervenor, Federal Aviation Administration.

James R. Rosa, Washington, D. C., was on brief for amicus curiae, American Federation of Government Emp., urging reversal.

Before ROBINSON, Chief Judge, and MacKINNON and EDWARDS, Circuit Judges.

Opinion PER CURIAM.

### ORDER

For the reasons set forth in the accompanying opinion, it is, by the Court, *sua sponte*,

ORDERED, that the document entitled "Declaration of J. Paul McGrath" filed herein under seal on December 2, 1981, and all other documents subsequently filed herein under seal (except the eight documents received by the Clerk on January 4, 1982, for *in camera* inspection by the Court) be and hereby are unsealed and made part of the public record in this case; and it is further

ORDERED, that the Federal Labor Relations Authority hold, with the aid of a specially-appointed administrative law judge, an evidentiary hearing to determine the nature, extent, source, and effect of any and all ex parte contacts and other approaches that may have been made to any member or members of the Authority while the appeal from the decision of Administrative Law Judge Fenton in Case No. 3–CO–105 of the Authority was pending before them; and it is further

ORDERED, that the Authority act to obtain on temporary assignment, through appropriate application to the Office of Personnel Management, an administrative law judge from another, neutral agency for the limited purpose of executing this order; and to report to the Court, within five days of the date hereof, the actions taken pursuant to this paragraph and the results thereof; and it is further

ORDERED, that the administrative law judge shall, on request, permit all parties to Case No. 3–CO–105, the Authority and any member thereof, all persons alleged to have contacted any member of the Authority

while the aforementioned cause was pending, and any other person he considers to have an interest in the matter, to participate fully in the hearing in person or by counsel, to present evidence, and to recommend findings; and it is further

ORDERED, that the administrative law judge shall transmit to the Court on or before March 19, 1982, the entire file, including the record of the aforementioned hearing, the participants' recommended findings, and his own recommended findings; and it is further

ORDERED, that all participants in the aforementioned hearing may, within ten days of the filing of the record with the Court, submit written briefs and recommendations on the effect of any evidence adduced in said hearing on the disposition of Case No. 3–CO–105 in light of the record made at the hearing.

PER CURIAM:

This case is before us on a petition to review an order of the Federal Labor Relations Authority (FLRA), issued October 22, 1981, decertifying the Professional Air Traffic Controllers Organization (PATCO) as the exclusive collective bargaining agent of federally-employed air traffic controllers.[1] That sanction was imposed after FLRA concluded that PATCO had called and participated in an illegal nationwide strike by its members. Well aware of intense public concern over the strike and the governmental response, we expedited the case. Unexpectedly, however, we have encountered a formidable obstacle to an immediate decision.

Documents submitted to the court under seal indicate that a member of FLRA may have been involved in improper ex parte contacts. This shadow on the integrity of the administrative process cannot be summarily dismissed. Consequently, we are today initiating procedures to ensure a thorough probe. It is our present intention to withhold release of any decision on the merits of the case until we receive and evaluate the record of the hearing and the recommended findings of the administrative law judge that the accompanying order directs.

I

PATCO filed its petition for review on the same day that FLRA issued its decision; concurrently, PATCO moved for an emergency stay. We granted the stay temporarily, and directed the agency to respond to the motion forthwith.[2] Upon receiving and considering that response, we dissolved our temporary stay and denied PATCO's motion for a stay for the duration of the appeal.[3] Recognizing, however, the urgency of the matter and the interests of the litigants and the public in a prompt disposition, we *sua sponte* ordered briefing on an expedited basis and scheduled oral argument for December 3. We allowed the Federal Aviation Administration (FAA) to intervene, and we accepted two amicus briefs.[4]

On December 2, counsel for FAA sought leave to lodge under seal a "declaration" of Assistant Attorney General J. Paul McGrath. In an accompanying memorandum, counsel explained that this statement was "submitted to apprise the Court of the facts and circumstances surrounding a recent investigation undertaken by the Criminal Division of the Department of Justice following allegations that there may have been an improper endeavor to influence the vote of one of the members of the FLRA."[5] Although this investigation had

1. *Professional Air Traffic Controllers Org. & Fed. Aviation Admin./Dep't of Transp.*, 7 F.L.R.A. No. 10 (Oct. 22, 1981).

2. *Professional Air Traffic Controllers Org. v. Federal Labor Relations Auth.*, No. 81–2135 (D.C.Cir. Oct. 23, 1981) (order granting temporary stay).

3. *Id.* (D.C.Cir. Oct. 27, 1981) (order denying motion for emergency stay and dissolving temporary stay.)

4. Amicus briefs were submitted by the American Federation of Government Employees and Anthony J. Skirlick, Jr.

5. Intervenor's Ex Parte Motion Under Seal to Lodge Attached Declaration Under Seal and to Order Service of This Motion and the Attached

terminated in the Department's decision not to initiate criminal proceedings, counsel expressed concern over any adverse effect on the reputations of individuals involved should even the mere facts of investigation be publicly disclosed. Counsel therefore moved that the McGrath declaration be sealed, and that it be served on counsel for PATCO and FLRA subject to a protective order forbidding disclosure of its contents.

Since the declaration and attendant memorandum were tendered to us on the very eve of oral argument, prudence demanded granting the request to seal the document. We shared the view that material of this nature should not be spread upon the public record until the court had an opportunity to examine it closely and scrutinize the foundation for the allegations of wrongdoing. Unless and until we could assure ourselves that the underlying information was substantial and seemingly reliable, public rumor and derogatory speculation might be needlessly invited.

The McGrath declaration was served on PATCO's counsel late on December 2. On the next day, scarcely an hour before oral argument was to begin, PATCO moved for an indefinite continuance "in order to allow counsel to evaluate what further action to take in light of this information."[6] We pursued what we deemed a superior course, however. We directed argument to go forward as scheduled, and informed the parties after the close of their presentations that we would delay our ruling for at least 30 days in order to permit further inquiry into the problem raised by the McGrath declaration. We invited PATCO to submit whatever motions it felt appropriate.

On December 11, PATCO filed a sealed motion for an order allowing limited discovery. The materials sought included the file compiled by the Department of Justice during its investigation; documents reflecting any communications between the Executive Branch and FLRA members on the PATCO case during its pendency before the agency; and answers to interrogatories ex-

ploring generally the possibility of ex parte contacts with FLRA members on the merits of the case. Counsel for FAA strenuously objected to any discovery whatsoever. Instead, and as part of a counterproposal, they submitted an index enumerating and summarizing the contents of all documents in the investigatory file. Seven of these were reports by agents of the Federal Bureau of Investigation recapitulating interviews with officials and employees of FLRA and other persons; two others related to communications from FLRA Member Frazier's attorney informing the FBI of suspected ex parte approaches made to another member. The seven remaining documents were described as intra-agency routing and transmittal slips, and memoranda recommending disposition of the matter. Counsel suggested that if we were inclined to permit any further inquiry at all, we should call for production *in camera* of the seven interview summaries and the communication from Member Frazier's attorney that instigated the investigation.

Concerned about the anomalous procedural posture of PATCO's discovery request and the extreme delicacy of the implications of the McGrath declaration, we decided that *in camera* inspection of these documents would indeed assist us in determining just how the matter ought to proceed. Therefore, on December 29, we ordered PATCO's discovery motions held in abeyance pending submission under seal of the eight last-mentioned documents for our examination.

## II

Our careful study of these materials leads us unfalteringly to the conclusion that a more extensive probe is imperative. The FBI interview reports suggest a serious problem, the dimensions of which the McGrath declaration vividly reflects. That knowledge acquired, we unseal the declaration and append a copy to this opinion. The FBI documents, like the declaration, leave us with a number of important but unan-

---

Declaration Under Protective Order at 1–2 (filed Dec. 2, 1981).

6. Petitioner's Motion for Continuance of Oral Argument at 2 (filed Dec. 3, 1981).

swered questions; we are not satisfied that the factual picture they assemble is yet complete. Our apprehension heightens with realization that neither PATCO nor any other interested party has had any opportunity to explore the effect that the newly-discovered events may have had on FLRA's decision.

We thus are constrained to invoke a procedure we have hitherto employed in analogous situations.[7] We are ordering FLRA to hold, with the aid of a specially-appointed administrative law judge, an evidentiary hearing to determine the nature, extent, source and effect of any and all ex parte communications and other approaches that may have been made to any member or members of FLRA while the PATCO case was pending before it. All interested parties will be allowed to participate in the hearing, individually or by counsel. Following the hearing, the administrative law judge will request all interested parties promptly to submit recommended findings to him; thereafter, he will transmit to this court the record thus compiled, all suggested findings, and his own recommended findings. We expect this adversarial inquiry to produce a vigorous and thorough airing sufficient to disclose whether any improper influence tainted FLRA's decisionmaking processes in this most important and controversial case. We are satisfied that these measures are essential, but hasten to emphasize that we have formed no opinion on whether anything improper has actually occurred. The facts may not be all in, and until unquestionably they are, no conclusion can be soundly drawn.

Our recognition that all aspects of this case deserve expedition impels us to require that the hearing we order be completed and the resulting record, with all attendant recommendations, be submitted to us on or before March 19, 1982. It also prompts us to continue, in the interim, our deliberations on the merits of the principal controversy. We regard the portents of improper communications with an administrative decisionmaker as grave; particularly in an adjudicatory proceeding in which the stakes were so high and on which national attention was focused with much concern, the suggestion of behind-the-scenes machinations is intolerable. At the same time, however, we are cognizant of our responsibility to reach as soon as possible a resolution of the important and novel questions the case presents. We think the public interest inhering in this litigation demands no less than that we proceed to formulate a decision, at least preliminarily and provisionally, based on the record as it now stands before us. We will, however, withhold the release of our opinion until we receive and evaluate the materials developed at the hearing. The decision that we ultimately reach will take account of the hearing record and the parties' accompanying recommendations.

## APPENDIX

## DECLARATION OF J. PAUL McGRATH

I, J. Paul McGrath, do declare under penalty of perjury, that the following is true and correct:

1. I am the Assistant Attorney General, Civil Division, United States Department of Justice. In that capacity I am responsible for the legal representation provided to the Federal Aviation Administration as intervenor in the above-captioned case.

2. On August 14, 1981, the Chief Administrative Law Judge of the Federal Labor Relations Authority ("FLRA") entered a recommended decision and order calling for the revocation of the Professional Air Traffic Controllers Organization's ("PATCO") status as the exclusive bargaining representative of federal air traffic controllers. Exceptions to the recommended decision and order were filed with the FLRA. On October 22, 1981 the three-members of the FLRA issued a decision and order adopting the recommended sanction. Two members of the FLRA unconditionally ordered immediate revocation. The third member of the

7. See *Home Box Office v. FCC*, 185 U.S.App. D.C. 142, 567 F.2d 9 (1977); *Sangamon Valley Television Corp. v. United States*, 106 U.S.App. D.C. 30, 269 F.2d 221 (1959).

FLRA concurred conditionally in the order, but removed all conditions and made the FLRA's revocation order a unanimous one by virtue of a supplemental decision filed on November 3, 1981.

3. I was recently advised that the Criminal Division of the Department of Justice had conducted, and on November 5, 1981, closed, an investigation concerning allegations that one of the three members of the FLRA had been the subject of an endeavor by a well-known organized labor figure (not a party to or otherwise involved in this proceeding) to influence the vote of one of the Authority Members against the sanction of revocation.

4. The investigative file—which includes internal Justice Department memoranda and a series of Forms 302, memorializing interviews of persons interviewed by agents of the Federal Bureau of Investigation—contains no evidence or suggestion that anyone connected with any party to the proceeding attempted to influence the decision-making process. The member of the FLRA who was the subject of the mentioned endeavor, represented that the final vote he cast was determined by his conscience and based on the merits of the case.

5. On the basis of these representations and the interviews· conducted by the FBI with other knowledgeable persons, the Department of Justice concluded that further criminal investigation into this matter was not indicated.

6. Nevertheless, having been furnished by the Criminal Division with the investigative data in this matter, I believe that it is my duty as an officer of the Court to relate the facts and circumstances surrounding the investigation for the information of the Court and the parties to the proceeding.

7. According to the investigative file, the private attorney for FLRA member Henry B. Frazier, III, met with an official of the Department of Justice in mid-October, 1981 and advised that his client sought to disclose certain conduct called to his attention by one of his fellow FLRA members, Leon B. Applewhaite. In discussions with representatives of the Criminal Division and, later with FBI agents, Member Frazier and his attorney reported that Member Applewhaite had mentioned on September 21, 1981 that he would that evening be dining in a restaurant with an acquaintance who was a well-known labor leader. The day after that engagement, Member Frazier reportedly claimed that Member Applewhaite, who, had previously resolved to vote to revoke PATCO's exclusive representative status, was vascillating as a result of his conversations with the labor leader. According to Member Frazier, the labor leader had "made it plain" to Member Applewhaite that if he voted to revoke, Member Applewhaite would be unable to obtain employment in the labor field at the expiration of his appointment to the FLRA. Member Frazier further stated that Member Applewhaite had tentatively decided to vote against decertification on this basis.

Member Frazier also claimed according to the interview report, to have been told by Member Applewhaite that, as a result of the personal dilemma weighing on his consideration of the case, Member Applewhaite made an inquiry into whether his reappointment to the FLRA was likely, but learned that no commitment for reappointment could be secured. Member Frazier further stated that Member Applewhaite later discussed the case with individuals at a Republican fund raising function he attended in New York City on October 6, 1981, and had been assured by one person or persons in attendance that if he alienated labor by his vote, he could find many opportunities available to him in the private practice of law in New York.

In providing this account, Member Frazier requested that the Criminal Division keep the information strictly confidential, and not disclose it to representatives of the Civil Division.

8. Several other persons known to FLRA Member Applewhaite were also questioned by the FBI, and stated that Member Applewhaite had mentioned speaking with the labor leader to them, or that they had heard rumors of the contact.

9. When questioned directly, Member Applewhaite reportedly admitted to having dinner with the labor leader, who he explained was a business and social acquaintance of long standing. Member Applewhaite flatly disputed the suggestion that the labor leader had attempted to subject him to suasion. Member Applewhaite characterized his concerns that his vote in the case would impact on future employment in a field in which labor and management interests were oppositely aligned as an obvious one. Member Applewhaite further stated that the discussion of his dilemma with the labor leader was purely philosophical in nature, and occupied five to ten minutes of their one and one-half hour dinner engagement. Member Applewhaite denied that he had ever approached an Administration official with respect to securing reappointment. He further characterized the remark made at the fund raising dinner that he need not worry about obtaining future employment as an offhand remark, made by one of many lawyers at the dinner who expressed a natural curiosity about the case once they ascertained his position. Finally Member Applewhaite reported that he has known pressure before, but that his vote turned on his personal conviction of how the case should be resolved on its merits.

I declare and reassert, under penalty of perjury, that the foregoing is true and correct.

Executed on December 2, 1981.

/s/   J. Paul McGrath
J. Paul McGrath