Present: Carrico, C.J., Lacy, Hassell, Koontz, and Kinser, JJ., and Compton and Whiting, Senior Justices

PARAMOUNT BUILDERS, INC., ET AL.

v.  Record No. 991696    OPINION BY JUSTICE ELIZABETH B. LACY
                                          June 9, 2000
COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Alan E. Rosenblatt, Judge

In this appeal, Paramount Builders, Inc. and its president Edward Augustine assert that the trial court should have set aside a civil investigative order issued against them.  We conclude, however, that the application for the order complied with the requirements of Code § 59.1-201, and we will affirm the judgment of the trial court refusing to set aside the order.

The Commonwealth's Attorney for the City of Virginia Beach (the Commonwealth) filed an application for a civil investigative order pursuant to § 59.1-201.  The Commonwealth sought documents and other information from Paramount Builders, Inc., and from Edward Augustine, individually and in his capacity as president of Paramount Builders, Inc., in connection with the solicitation of customers for their home improvement business.  The ex parte application was granted by the circuit court on January 8, 1999.

Pursuant to § 59.1-201(C), Paramount and Augustine moved to set aside the order and, in the alternative, moved to

modify the order and for a protective order.  Both sides filed memoranda and, following argument of counsel, the trial court entered an order granting the motion to set aside the investigative order as to Augustine in his individual capacity.  The trial court modified the terms of the civil investigative order but refused to set it aside as to Paramount and Augustine as president of Paramount.

In their appeal, Paramount and Augustine (hereinafter collectively "Paramount") assign error to the trial court's order refusing to set aside the investigative order, asserting that the Commonwealth and the application for the civil investigative order failed to meet the good faith or impracticality requirement and the reasonable cause requirement of subsections (A) and (B) of § 59.1-201.

Section 59.1-201 provides in relevant part:

A.  Whenever the attorney for the Commonwealth . . . has reasonable cause to believe that any person has engaged in, or is engaging in, or is about to engage in, any violation of § 59.1-200, the attorney for the Commonwealth . . . after making a good faith effort to obtain such information, is unable to obtain the data and information necessary to determine whether such violation has occurred, or that it is impractical for him to do so, he may apply to the circuit court . . . for an investigative order . . . .

B.  The circuit courts are empowered to issue investigative orders, . . . .  An application for an investigative order shall identify:

1.  The specific act or practice alleged to be in violation of § 59.1-200;

2

2.  The grounds which shall demonstrate reasonable cause to believe that a violation of § 59.1-200 may have occurred, may be occurring or may be about to occur;

3.  The category or class of data or information requested in the investigative order; and

4.  The reasons why the attorney for the Commonwealth. . . is unable to obtain such data and information, or the reason why it is impractical to do so, without a court order.

Paramount argues that before a civil investigative order can be issued, the Commonwealth must demonstrate "factual" compliance with subsection (A) of § 59.1-201 and "formal" compliance with subsection (B) of that section.  According to Paramount, subsection (A) requires the Commonwealth to make a factual showing that it had reasonable cause to believe that a violation of § 59.1-200 of the Virginia Consumer Protection Act, Code §§ 59.1-196 through -207 (Consumer Protection Act) had occurred, was occurring, or would occur, and that it had made a good faith effort to acquire the desired information and was unsuccessful, or that it was impractical to seek the information without a court order.  Subsection (B), Paramount continues, requires that the application for the order comply with the "formal" requirements listed in the subsection's subparts.  Under Paramount's analysis, failure to comply with either of these "factual" or "formal" requirements defeats the request for a civil investigative demand.

3

We disagree with Paramount's construction of these provisions. Subsection (A) describes the circumstances under which an application for a civil investigative order is appropriate and subsection (B) incorporates those circumstances into conditions which must be identified in the application before a circuit court can issue a civil investigative order. This statutory scheme does not, however, impose a two-step compliance process as suggested by Paramount. Thus, in resolving this appeal, we are concerned only with Paramount's allegations that the application did not comply with the requirements of subsection (B)(1), (2), and (4).[1]

### Compliance with § 59.1-201(B)(1) and (B)(2).

Subparagraphs (1) and (2) of § 59.1-201(B) require identification of the alleged acts or practices which violate the Consumer Protection Act and the grounds which demonstrate reasonable cause to believe the alleged violations have occurred, are occurring, or may occur. Paragraph 6 of the application states that "upon information and belief" Paramount's agents, through directives from Paramount, (1) induced consumers to execute a waiver of their "three-days right to cancel" by certain misrepresentations such as

---

[1] Paramount also complains that the trial court should have conducted an evidentiary hearing; however, Paramount did not assign error to this issue. Rule 5:17(c).

4

obtaining a "'special price'" or other non-emergency situations in violation of the Virginia Consumer Protection Act, § 59.1-200(9), (14), and (19); (2) failed to leave copies of the contracts and signed "right to cancel" waivers at consumers' homes or failed to give such copies to consumers upon request in a timely manner in violation of §§ 59.1-21.4(2) and 59.1-200(19); (3) misrepresented that Paramount was the "sole distributor" or only "locally authorized dealer of various building supplies" in violation of § 59.1-200(3); and (4) "made it difficult for consumers to cancel within the three days' cancellation period" by delaying requests until after the time period had expired and refusing to accept delivery of notice of cancellation in violation of § 59.1-200(19).

To demonstrate that the Commonwealth had reasonable cause to believe Paramount engaged in the conduct listed in Paragraph 6, as required by § 59.1-201(B)(2), the application stated in Paragraph 7 that 19 complaints had been received by or referred to the Consumer Affairs Division of the Commonwealth Attorney's Office and that affidavits by a former employee and a former officer of Paramount recited that the actions described in Paragraph 6 are "being authorized and conducted in the regular course of business" by Paramount against other consumers who may not have yet filed a

complaint. Copies of the affidavits and two of the 19 complaints were attached as exhibits to the application. Paragraph 8 explained the pattern of operation recited in the exhibits which the Commonwealth believed showed a practice of past and continuing violations of the Consumer Protection Act.

Paramount first argues that these allegations are insufficient because they reflect only opinions and conclusions, not facts. Paramount further asserts generally that there is no evidence of any directives by Paramount or its representatives to misrepresent Paramount's role as sole distributor, to induce customers by false pretenses to sign a waiver of their right to cancel, or any evidence that Paramount agents were directed not to leave contracts or signed waivers with the customers or to delay or make it difficult for customers to cancel their contracts.

Paramount maintains that the signed waivers were not part of the sales contract required to be supplied to the customer, that failure to provide the signed waiver was not part of a policy to thwart consumer's efforts to cancel, and, finally, that the waivers themselves did not violate the Home Solicitation Act because that Act only declares such waivers void, not in violation of that Act. Therefore, Paramount contends that these actions were not violations of § 59.1-200. In summary, Paramount asserts that the actions alleged either

did not occur or that they were not violations of the Consumer Protection Act.

We disagree with Paramount. The recitations in the application and the attached exhibits indicate that Paramount's agents, at the direction of Paramount and Augustine, engage in a standard procedure that includes offering "showcase home" discounts tied to the execution of "right to cancel" waivers, failing to give copies of the waivers to the customers, and enforcing sales contracts regardless of the validity of the waivers. This pattern of action, as stated in one of the complaints attached to the affidavit, leaves the consumer with the impression that the waiver was valid and that the sales contract could not be cancelled. The application clearly alleges that these acts and practices violate the Consumer Protection Act.

An application for an investigative order must also show that there is "reasonable cause to believe" that a violation of the Consumer Protection Act has occurred, is occurring, or will occur. § 59.1-201(A). The "reasonable cause" standard requires less than the probable cause standard and does not require a showing that a violation has in fact occurred. As stated by the Commonwealth, "[a]t this point in the investigation it is not necessary for the Commonwealth to prove that any customer has actually been deceived; that is to

7

be established at trial.  Rather, what is important is that the Commonwealth has made its prima facie case of reasonable cause to investigate."  The totality of information presented in the application and exhibits demonstrates that reasonable cause exists to believe that Paramount would engage in specific acts which violated § 59.1-200.

Compliance with § 59.1-201(B)(4)

Section 59.1-201(B)(4) requires identification of the reasons why the Commonwealth "is unable to obtain such data and information, or the reason why it is impracticable to do so, without a court order."  Paragraph 9 of the application states:

> The reason why the Office of Commonwealth's Attorney is unable to obtain the information/items as listed in Exhibit "A" is that upon information and belief and based upon the affidavits, the Office of Commonwealth's Attorney believes it would suffer irreparable damages that should a mere letter, rather than a court order, be sent to Paramount Builders, Inc., because under information and belief, Paramount Builders, Inc., would destroy many of the necessary documents.

Paramount argues that this statement is insufficient to satisfy § 59.1-201(B)(4), because the application must identify either that the Commonwealth was unable to secure the information or that it was impractical to do so, but not both.  In this case, Paramount asserts, the Commonwealth chose to assert that it was "unable to obtain" the data, not that it was "impractical" to do so.  Having stated that it was unable

8

to obtain the information, Paramount continues, the Commonwealth was required to but did not identify the reasons why it could not obtain the information.  Thus, Paramount concludes, the application fails to comply with the requirements of § 59.1-201(B)(4).

We agree with Paramount that § 59.1-201(B)(4) is intended to require the application to identify one of two mutually exclusive circumstances, either of which will support the need for a court order.  The first circumstance is that, even though the Commonwealth made good faith efforts, it was "unable to obtain" the information.  The second circumstance is that such good faith efforts to obtain the information were not made because to do so would have been "impractical."[2] Paramount seeks to defeat the application in this case on the theory that the Commonwealth chose the former circumstance when it used the phrase "unable to obtain" in paragraph 9, and, therefore, is precluded from relying on any reason of impracticality to support the issuance of a court order.  We disagree.

The identification requirement set out in the statute is that the application identify reasons why the applicant is "unable to obtain" information "without a court order" or the

_____

[2] Although the intent of § 59.1-201(B)(4) is not disputed, we nevertheless note that the specific language of the provision does not accurately reflect that intent.

9

reason why "it is impracticable" to obtain such information "without a court order." Paragraph 9 of the application clearly states that the "reason why" the Commonwealth's Attorney is "unable to obtain" the information "without a court order" is because the Commonwealth's Attorney believes that "should a mere letter, rather than a court order, be sent to Paramount," Paramount "would destroy many of the necessary documents." There is no confusion over the statement made in the application. It clearly identifies the reason why it would be impractical to engage in efforts, good faith or otherwise, to obtain the information without a court order — because the Commonwealth's Attorney believed that the information would be destroyed. The reasonableness of this belief was supported by the affidavits accompanying the application. Compliance with subparagraph (4) of § 59.1-201(B) is not defeated simply because the phrase "is unable to obtain" was used in identifying why it was impractical for the Commonwealth to try to obtain the information by letter, rather than court order. Thus, we reject Paramount's claim that the application failed to comply with the requirements of § 59.1-201(B)(4).

Lastly we reject Paramount's argument that the order of the trial court was wrong because the order was based upon "a totally inadequate finding with respect to the good faith

10

requirements" of the Code.  The final order of the trial court states "IT APPEARING that the Commonwealth complied with § 59.1-201 of the Code of Virginia (1950), as amended <u>made good faith efforts and had sufficient reasonable cause</u>." (Emphasis added.)  While the emphasized phrase seems to indicate a finding of good faith efforts and reasonable cause, the phrase is incomplete and its meaning unclear.  However, this confusion does not invalidate the trial court's order. The order clearly states the dispositive finding, that the requirements of § 59.1-201 were satisfied.  There is no requirement that a trial court's order reflect a specific finding as to each of the conditions required to be identified by § 59.1-201(B).

Accordingly, for the reasons stated, we will affirm the judgment of the trial court.

<u>Affirmed.</u>