COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, Frank and Senior Judge Overton
Argued at Chesapeake, Virginia


SUPERMARKET EXPRESS, L.L.C.,
  t/a LAGOON
                                                MEMORANDUM OPINION[*] BY
v.        Record No. 1389-04-1                  JUDGE NELSON T. OVERTON
                                                    MARCH 22, 2005
COMMONWEALTH OF VIRGINIA,
  DEPARTMENT OF ALCOHOLIC BEVERAGE
  CONTROL AND VIRGINIA ALCOHOLIC BEVERAGE
  CONTROL BOARD


            FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                          H. Thomas Padrick, Jr., Judge

            Kevin E. Martingayle (Stallings & Bischoff, P.C., on briefs), for
            appellant.

            Carla R. Collins, Assistant Attorney General (Jerry W. Kilgore,
            Attorney General; Frances S. Ferguson, Deputy Attorney General, on
            brief), for appellees.


        Supermarket Express, L.L.C., t/a Lagoon (Lagoon) appeals the May 28, 2004 order of the

circuit court affirming the suspension of its wine and beer on and off premises and mixed

beverage restaurant licenses by the Virginia Alcoholic Beverage Control Board (ABC).  On

appeal, Lagoon argues (1) Code § 4.1-225(1)(h) and the Virginia Beach noise ordinance are

unconstitutionally vague, subject to selective enforcement, and without articulable standards,

(2) it was improper for an associate city attorney to present ABC's case to the hearing officer,

(3) the court erred in affirming ABC's denial of its motions for remand to present additional

evidence and for the recusal of the Board members, (4) the court erred in affirming the hearing

────────────────────
        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

officer's allowance of the amendment of the charge immediately prior to the hearing, and (5) that Rule 2A:3 acted to deny it equal protection and due process. We disagree and affirm the trial court's decision.

## BACKGROUND

Lagoon is the holder of ABC licenses permitting wine and beer on and off the premises and allowing the sale of mixed beverages. Pursuant to a report of license violation, a hearing officer conducted an administrative hearing on October 27, 2003. The original complaint advised Lagoon that ABC would consider whether "the place occupied by [Lagoon] is so located that violations of the ABC Act or the laws of the Commonwealth relating to peace and good order have resulted from issuance of the license and operation thereunder . . . ." The complaint also alleged that "[f]rom April 13, 2002 to April 12, 2003, at various times, the licensee allowed noisy or disorderly conduct upon the licensed premises, in violation of [Code] § 4.1-225(1)(h) . . . ." Immediately prior to the hearing, the hearing officer amended the second charge to extend the time period under consideration to July 5, 2003.

Evidence presented at the hearing indicated the police several times had warned the club's manager and owners of excessive noise coming from the establishment. Several noise ordinance violations were issued for incidents occurring on May 25, 2002, July 22, 2002, December 28, 2002, May 15, 2003, and June 5, 2003. Police officers also testified about several fights involving injuries in and outside the club as well as violations of laws against underage drinking and possession of narcotics by Lagoon patrons during the period in question.

The hearing officer dismissed the first charge against Lagoon, but found the evidence substantiated the second charge. She recommended that Lagoon's licenses be revoked. Lagoon appealed the hearing officer's decision to ABC. ABC heard the appeal on March 23, 2004 and issued its final decision on March 25, 2004, upholding the hearing officer's findings. Instead of

revoking Lagoon's licenses, ABC suspended them for ninety days, allowing a sixty-day suspension if Lagoon paid a civil penalty of $5,000. ABC also placed Lagoon on probation for two years beginning on June 1, 2004. Lagoon then appealed ABC's decision to the circuit court. The circuit court affirmed ABC's action. It is from this decision that Lagoon appeals.

## ANALYSIS

The standard by which a trial court must review the findings of a state agency is not equivalent to a trial *de novo*. School Board v. Nicely, 12 Va. App. 1051, 1062, 408 S.E.2d 545, 551 (1991). In reviewing an agency decision, "[t]he scope of court review of a litigated issue under the [Administrative Process Act] is limited to determination [of] whether there was substantial evidence in the agency record to support the decision." State Board of Health v. Godfrey, 223 Va. 423, 433, 290 S.E.2d 875, 880 (1982); see Code § 9-6.14:17. The substantial evidence standard is "designed to give great stability and finality to the fact-findings of an administrative agency." Va. Real Estate Comm'n v. Bias, 226 Va. 264, 269, 308 S.E.2d 123, 125 (1983). A trial court may reject the findings of fact "only if, considering the record as a whole, a reasonable mind would *necessarily* come to a different conclusion." Id. (citing B. Mezines, Administrative Law § 51.01 (1981)).

### I.

In pertinent part, Code § 4.1-225(1)(h) provides:

> The Board may suspend or revoke any license other than a brewery license, in which case the Board may impose penalties as provided in § 4.1-227, if it has reasonable cause to believe that:
>
> The licensee . . .
>
>     \*     \*     \*     \*     \*     \*     \*
>
> Has allowed noisy, lewd or disorderly conduct upon the licensed premises . . . .

Appellant asserts "[t]here are no standards or definitions set out in the statute," thus causing the enforcement to be "entirely discretionary on an individualized basis among law enforcement officers." Lagoon appears to assert the "reasonable cause" language in the statute is unconstitutionally vague. Relying on the testimony of an ABC agent that the standard she uses to decide whether to bring charges under Code § 4.1-225 is based on her "opinion," Lagoon complains that "there are absolutely no standards for law enforcement and the public is subjected to the whim of completely 'individualized' discretion or opinion . . . ."

> When testing the constitutional validity of statutes, courts shall presume the statute to be valid. See Bennett v. Commonwealth, 8 Va. App. 228, 235, 380 S.E.2d 17, 21 (1989). Consequently, the burden to show the constitutional defect is on the challenger. See id. In reviewing a void-for-vagueness argument, courts employ a two pronged test. See Brewster v. Commonwealth, 23 Va. App. 354, 357, 477 S.E.2d 288, 289 (1996). First, the language of the statute must provide a person of average intelligence a reasonable opportunity to know what the law expects from him or her. See id. Second, the language must not encourage arbitrary and discriminatory selective enforcement of the statute. See Coleman v. City of Richmond, 5 Va. App. 459, 463, 364 S.E.2d 239, 241-42 (1988).

Gray v. Commonwealth, 30 Va. App. 725, 731-32, 519 S.E.2d 825, 828 (1999). "In determining whether a legislative enactment is unconstitutionally vague, the Supreme Court has considered whether the words used have a well-settled . . . meaning . . . ." Flannery v. City of Norfolk, 216 Va. 362, 366, 218 S.E.2d 730, 733 (1975); see also, e.g., Pedersen v. City of Richmond, 219 Va. 1061, 1065, 254 S.E.2d 95, 98 (1979) (citing dictionary to determine "generally understood" meaning for adjective in ordinance).

As applied to appellant, Code § 4.1-225(1)(h) survives the constitutional challenge. The terms "noisy," "disorderly conduct," and "reasonable cause" have well established meanings.[1] A

---

[1] "Noise" is defined as "loud, confused, or senseless shouting or outcry: din or uproar of persons." Webster's Third New International Dictionary 1533 (1981); Code § 18.2-415 criminalizes specific enumerated acts as "disorderly conduct"; "[t]he 'reasonable cause' standard

person of average intelligence would know what type of conduct is prohibited. Appellant also contends the statute is unconstitutionally vague because it authorizes and encourages discriminatory enforcement. However, the terms used in the ordinance describe particularized acts, the occurrence of which, when measured by common practice and understanding, are deemed to violate the statute. Therefore, the statute is sufficiently definite to avoid arbitrary and discriminatory enforcement and is not unconstitutionally vague.

The bulk of Lagoon's argument supporting its first question presented focuses on the constitutionality of the Virginia Beach noise ordinance. We need not address this argument. Whether Lagoon actually violated the local noise ordinance was not an issue decided by the hearing officer or the lower court. Instead, the fact that Lagoon had been cited under the ordinance was introduced as evidence to prove the licensee had allowed noisy and disorderly conduct upon the licensed premises. Even if the Virginia Beach noise ordinance is vague – a question we do not decide – it would merely affect the weight to be given to the evidence that Lagoon had been cited under that ordinance numerous times. Because Lagoon does not challenge the sufficiency of the evidence supporting the finding of a violation of Code § 4.1-225(1)(h), we need not decide whether any problems with the local ordinance would discredit the substantial evidence that Lagoon had "allowed noisy . . . or disorderly conduct upon the licensed premises."

II.

Citing Cantrell v. Commonwealth, 229 Va. 387, 329 S.E.2d 22 (1985), Lagoon contends it was improper for a city attorney for the City of Virginia Beach to "act as prosecutor in this matter." In Cantrell, the Supreme Court of Virginia found a conflict of interests where a crime

---

requires less than the probable cause standard and does not require a showing that a violation has in fact occurred." Paramount Builders, Inc. v. Commonwealth, 260 Va. 22, 28, 530 S.E.2d 142, 144 (2000).

victim's family hired a private attorney to institute a civil suit and the trial court designated the same attorney to act as a special prosecutor to assist the Commonwealth's attorney in Cantrell's criminal prosecution. In this case, a civil action, a city attorney represented ABC at the initial hearing before the hearing officer. We find no error in the court's conclusion that the city attorney acted within her authority by "prosecuting" the case.

The matter before the court was civil in nature rather than criminal. See Jackson v. W., 14 Va. App. 391, 410, 419 S.E.2d 385, 396 (1992). Although Code § 2.2-507 provides that the Office of the Attorney General shall provide legal services for the Board in civil matters, Code § 2.2-509 contemplates that a substitute may represent the Board in administrative proceedings. Lagoon correctly notes that the record does not indicate the Attorney General specifically authorized the city attorney to represent ABC in the administrative proceeding. However, we find any error in the process by which the city attorney presented evidence at the hearing was harmless.

"In short, error which does not injuriously affect the interest of the party complaining is not reversible." Jenkins v. Winchester Dep't of Soc. Servs., 12 Va. App. 1178, 1186, 409 S.E.2d 16, 21 (1991). Lagoon asserts it was harmed by the city attorney's participation in the hearing due to an inherent bias and a conflict of interests. The record reveals no such bias or conflict on the part of the city attorney.

III.

Lagoon challenges the denial of its motion for a rehearing and for the recusal of Board members.

3 VAC 5-10-180 provides, in pertinent part:

> A rehearing before a hearing officer shall not be held in any matter
> unless it be affirmatively shown that relevant and material
> evidence, which ought to produce an opposite result on rehearing,
> is available, is not merely cumulative, corroborative or collateral,

- 6 -

and could not have been discovered before the original hearing by the use of ordinary diligence. . . .

Lagoon proffered as the basis for its rehearing motion documentation of a November 14, 2003 ABC meeting attended by the city attorney. Although Lagoon speculates that the merits of its case before the Board was discussed at the meeting, the documentation demonstrates only that the meeting was procedural in nature. There is no proof that Lagoon, either overtly or covertly, was the topic of conversation at the meeting. In sum, Lagoon has failed to proffer any material evidence and the rehearing request was properly denied.

Similarly, Lagoon's request that the Board members recuse themselves was also properly denied. The evidence simply fails to establish that any *ex parte* communication between the Board and Virginia Beach officials occurred with respect to Lagoon.

IV.

Lagoon argues it was error for the hearing officer to amend the second charge immediately before the hearing. Lagoon asserts it "was not prepared to address the additional months and incidents" and that the "last minute" amendment constituted a due process violation.

To show a due process violation, Lagoon must overcome "the presumption of official regularity" which is bestowed upon agency decisions. Code § 2.2-4027. The record reveals an informal conference was conducted in August 2003, prior to the original hearing date, at which time the proposed amendment was discussed. The hearing was continued twice at Lagoon's request. The hearing officer correctly noted Lagoon had "prior knowledge" of the extended time period. Furthermore, Lagoon, while objecting to the amendment, did not request a continuance at the October 23, 2003 hearing. As such, there was no due process violation and we find no error in granting the amendment.

V.

Citing no authority, Lagoon asserts Rule 2A:3 "denies equal protection and due process." Although Lagoon raised this issue in its petition for appeal before the trial court, it failed to obtain a ruling on this matter from that court. Lagoon presented no argument on the issue before the court, and the court's ruling merely affirms the Board's suspension of Lagoon's licenses. Accordingly, we need not address this issue as "there is no ruling for us to review on appeal." Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 489 (1998).

However, we note that while Lagoon complains it "was forced to file its circuit court petition making certain assumptions as to what would be included in the record, and without being able to dissect and analyze the exact, full record," it failed to demonstrate it suffered any actual prejudice as a result. "It is a fundamental principle of constitutional law, firmly supported by both Federal and State authorities, that a person who challenges the constitutionality of a state statute has the burden of proving that he himself has been injured or is threatened with injury by its enforcement." DeFebio v. County Sch. Bd., 199 Va. 511, 514, 100 S.E.2d 760, 762-63 (1957).

For the reasons stated above, the ruling of the circuit court is affirmed.

Affirmed.

Benton, J., dissenting.

I.

The record indicates that on October 27, 2003 the ABC Board's hearing officer conducted an evidentiary hearing on the ABC Board's two charges that Lagoon operated in a manner that subjected its license to suspension or revocation. At that hearing, an associate city attorney for the City of Virginia Beach acted on the ABC Board's behalf, presenting evidence in support of the revocation and suspension. During the course of her closing argument, the associate city attorney said the following:

> Another thing to go on the record: Yes, we do object to new licenses that are going into premises that didn't used to have licenses. I will go right on the record with that. We come here to ABC hearings, and we get basically talked about every time, saying, basically, the ABC doesn't know how many is too many. The City of Virginia Beach thinks that we know how many is too many, and we have too many down there right now.

The associate city attorney further asserted that the evidence was sufficient to support both charges and argued "the license [should be] revoked." At the conclusion of the arguments, the hearing officer announced she would "take the matter under advisement."

Two weeks later, on November 14, 2003, while the matter was still pending for decision, representatives from the City of Virginia Beach met with representatives from the ABC Board in the Board's Richmond office. Among the persons present at the meeting were the associate city attorney, who had represented the interest of the ABC Board at the suspension and revocation hearing of Lagoon's license, the chief hearing officer, who supervises the work of the hearing officer that was considering the revocation and suspension of Lagoon's license, and the chairman of the ABC Board.

- 9 -

The record further indicates that at the meeting, the representatives of the City presented two documents that concerned issues to be discussed. The first document specifically mentioned Lagoon and raised the following concern:

> ISSUE: Hearings not timely set - *ex parte* continuances granted upon applicant's request (allows establishments to finish the resort season even when problems are critical).
>
> Example:
>
> May 2003, requested hearing to revoke license of Lagoons. July 2003, requested expedited hearing to revoke license of Lagoons due to public safety concerns. The case was set for August 14, 2003. Defense attorney requested continuance because he was not available and would not be available until September. He provided September 19th as an agreeable date. After the continuance was granted and the date was set, the City was informed. After filing a FOIA with the City regarding Lagoons, defense counsel contacted the Board, again requesting a continuance because he was not available on September 19th. The Board granted the continuance and has yet to set a new hearing date. The City found out about this when the Associate City Attorney called the Agent involved to let her know about the FOIA request which had been filed. The hearing was held October 27th; no result as of November 11th.

The second document did not specifically mention Lagoon but listed various instances in which the City had opposed the issuance of licenses in the same vicinity in which Lagoon is located and included as an issue the following:

> ISSUE: Hearing Officers refuse to rely upon § 4.1-222(A)(3) to deny licenses (too many establishments/public safety concerns). See attached statute.
>
> As of 5 November 2002, there were approximately 114 businesses with ABC licenses on Atlantic and Pacific, between 5th Street and 31st Street. Of those businesses approximately 42 are located on Atlantic and Pacific between 17th and 21st Street.
>
> Code of Virginia Section 4.1-222.A.3 lists one of the reasons the Board may refuse to grant a license is if it has reasonable cause to believe that there are already too many licensed establishments in the area.

> The City has objected to the issuance of a license in the Block area of the Resort area (17th and 21st Street and Atlantic) under the provisions of this section on numerous occasions. Each time the attorney representing the interests of the City has been advised by the hearing officer that the Board would not refuse to issue a license if the objection was based solely on the provisions of Section 4.1-222.A.3 because the officer had no way of determining how many licenses were too many, and to attempt to do so without further guidance from the General Assembly, would be arbitrary and capricious . . . .

This issue is directly related to the associate city attorney's argument to the hearing officer about "too many" licensed establishments on the Beach and the request to revoke Lagoon's license.

The record indicates that among the topics discussed at this meeting was the timing of the issuance of license suspensions. The associate city attorney was quoted, following the meeting, as urging that license suspensions should be served in the summertime and asserting that suspensions at any other time would be a useless act. After the meeting, the City issued the following press release:

> Representatives of Virginia Beach City Council, City Attorney's office and Police Department met in Richmond with members of the Alcoholic Beverage Control Board and senior management officials today to discuss cooperative efforts to improve the levels of enforcement of ABC laws and regulations in the City.
>
> During a two-hour meeting, Beach officials shared local concerns with what they described as a small number of alcohol-licensed operations which threaten public safety in the city. They requested additional ABC enforcement efforts and expedited disciplinary proceedings for problem establishments. ABC officials provided the city visitors with an explanation of the ABC licensing and disciplinary process, and pledged renewed effort at communication and cooperation with Virginia Beach to address problem licensees. No specific licensees were discussed.
>
> Preliminary discussions were held on a city proposal under consideration to create a team of various city regulatory departments and ABC to inspect licensed establishments for zoning, tax, public health and other local code compliance as well as compliance with liquor laws.

II.

Lagoon alleges that the proceedings were tainted by the *ex parte* contact between the ABC Board's decisionmakers and the City's representatives, one of whom was the associate city attorney prosecuting the Board's two charges against Lagoon at the evidentiary hearing. As the record demonstrates, this *ex parte* contact occurred while the charges were pending for adjudication. This record brings into focus the well established principle that *ex parte* contacts by one party with the fact finder during an adjudicatory proceeding raises the specter of a violation of the other party's due process rights. See Chessman v. Teets, 354 U.S. 156, 162 (1957); Haller v. Robbins, 409 F.2d 857, 859 (1st Cir. 1969). This is so because *ex parte* contacts violate the most fundamental tenant of due process: the right to be heard by an unbiased decisionmaker.

> [A] "fair trial in a fair tribunal is a basic requirement of due
> process." In re Murchison, 349 U.S. 133, 136 (1955). This applies
> to administrative agencies which adjudicate as well as to courts.
> Gibson v. Berryhill, 411 U.S. 564, 579 (1973). Not only is a
> biased decisionmaker constitutionally unacceptable but "our
> system of law has always endeavored to prevent even the
> probability of unfairness." In re Murchison, *supra*, at 136; cf.
> Tumey v. Ohio, 273 U.S. 510, 532 (1927).

Withrow v. Larkin, 421 U.S. 35, 46-47 (1975).

The record contains indications that the ABC Board rendered its decision in part based on what it and the City officials discussed during its meeting while the charges were pending for adjudication. The City officials disclosed in a press release that they specifically discussed with the ABC Board the issue of licensing on the Beach. Moreover, the documents Lagoon obtained through a freedom of information request demonstrated that the parties may have specifically discussed Lagoon. A local newspaper also reported that the city attorney who prosecuted the ABC Board's charges against Lagoon and a city councilman said they urged the ABC Board to revise its processes to impose suspensions for establishments at the Beach during the summer.

- 12 -

Although this issue was never argued during the hearing, that is precisely what the ABC Board did when it rendered its decision in this case.

The Virginia Administrative Process Act does not have explicit rules governing *ex parte* contacts.[2] Due process requires, however, procedural safeguards be observed to protect a party's right to be heard by an unbiased decisionmaker during the adjudicatory proceeding. Thus, even without an explicit proviso in the Act, due process principles should have required the Board to document the *ex parte* communication, notify Lagoon, make the content of the communication a part of the record, and provide Lagoon a meaningful opportunity to respond. See Professional Air Traffic Controllers Org. v. FLRA, 672 F.2d 109, 113 (D.C. Cir. 1982). The due process requirements for adequate notice and an opportunity to be heard mandate disclosure of the *ex parte* communications on the record before any decision is rendered. Id.

> Disclosure requirements serve the "fundamental notions of fairness implicit in due process and . . . the ideal of reasoned decisionmaking on the merits which undergirds all of our administrative law." Only through disclosure of *ex parte* communications may we protect the . . . "right to participate meaningfully in the decisionmaking process" and "the critical role of adversarial comment in ensuring proper functioning of agency decisionmaking and effective judicial review."

North Carolina Environmental Policy Institute v. Environmental Protection Agency, 881 F.2d 1250, 1258 (4th Cir. 1989).

---

[2] Unlike Virginia's Act, the federal act and the administrative procedure acts of most states prohibit *ex parte* contacts, and most require *ex parte* communications be made part of the record. See, e.g., 5 U.S.C. §§ 554(d), 557(d); Alaska Stat. § 44.62.630; Ark. Code Ann. § 25-15-209; Conn. Gen. Stat. § 4-181; Fla. Stat. § 120.66; Idaho Code § 67-5253; 5 Ill. Comp. Stat. 100/10-60; Iowa Code § 17A.17; Kan. Stat. Ann. § 77-525; 5 Me. Rev. Stat. § 9055; Md. Code Ann. § 10-219; Mich. Comp. Laws § 24.282; Mont. Code Ann. § 2-4-101; Neb. Rev. Stat. § 84-914; N.H. Rev. Stat. Ann. § 541-A:36; N.M. Stat. Ann. § 12-8-13; N.Y. Comp. Laws. St. Admin. P. Act § 307; N.C. Gen. Stat. § 150B-35; 75 Okl. St. § 313; Or. Rev. Stat. § 183.462; 24 Vt. Stat. Ann. § 1207; Wash. Rev. Code § 34.05.455; W. Va. Code 29A-1-4.

When, as here, an *ex parte* communication is made that involves a key issue of a pending case, the ABC Board's failure to disclosure the communication gives the appearance that it made its decision based on what occurred at its meeting with City officials. This "appearance" of impropriety was underscored by the ABC Board's failure to provide Lagoon with notice of the meeting. Moreover, as appeared was warranted here, the ABC Board should have ordered and conducted "'an evidentiary hearing to determine the nature, extent, [and] source'" of the *ex parte* communications. Id. (quoting Professional Air Traffic Controllers Org., 672 F.2d at 113). In addition, as the party making the communication, it should have been the City's burden "'to show cause why [its] claim or interest in the proceeding should not be dismissed, denied, disregarded, or otherwise adversely affected on account of such violation . . . .'" North Carolina Environment Policy Institute, 881 F.2d at 1258 (quoting the federal requirement of 5 U.S.C. § 557(d)(1)(D)).

For these reasons, I would hold that this record provides a basis upon which the trial judge should have ruled that the ABC Board erred in denying Lagoon's motion for an evidentiary hearing to inquire into the topics discussed at the City's meeting with the ABC Board and to determine whether the *ex parte* contact impaired Lagoon's right to have an impartial decision by the hearing officer and the ABC Board. *Ex parte* contacts in adjudicatory administrative proceedings are disturbing; they occur unnoticed to the public yet, at a local level, substantially affect the due process rights of private businesses and business persons. Whether the City and representatives of the ABC Board held a discussion concerning matters related to the pending proceeding implicates Lagoon's right to due process. Therefore, I would reverse the judgment and remand with instructions to the trial judge to remand the proceeding to the ABC Board for an evidentiary hearing and for reconsideration of the matter at issue.